**ILGWU NATIONAL RETIREMENT FUND, Irwin Solomon and Joseph Moore, Plaintiffs,**

v.

**SMART MODES OF CAL., INC. d/b/a Madison 7, Defendants.**

No. 88 Civ. 3212 (RPP).

United States District Court, S.D. New York.

April 12, 1990.

Milgrim Thomajan & Lee by Marc E. Richards, Sara L. Chenetz, New York City, for plaintiffs.

Faust Rabbach & Stanger by David Rabbach, Anthony Cheh, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiffs ILGWU National Retirement Fund ("Fund") and two of its trustees move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on its claim against defendant Smart Modes of Ca., Inc d/b/a Madison 7 ("Smart Modes") for withdrawal liability allegedly due under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381, *et seq.*, plus interest, liquidated damages, attorneys fees and costs. The Fund is a multiemployer pension plan within the meaning of 29 U.S.C. § 1002(2) and (37).

## STATUTORY FRAMEWORK

The withdrawal liability provisions of ERISA were amended by MPPAA in 1980. Under MPPAA, an employer who withdraws from a multiemployer plan, with certain exceptions not relevant here, is assessed withdrawal liability, such that the employer is required to continue funding its proportionate share of the plan's unfunded vested benefits. 29 U.S.C. §§ 1381, 1391. An employer completely withdraws from a plan when it either permanently ceases to have an obligation to contribute to the plan, or permanently ceases all covered operations under the plan. 29 U.S.C. § 1383. Withdrawal liability may also be imposed for partial withdrawals. 29 U.S.C. §§ 1381, 1385.

When an employer withdraws from a multiemployer plan, the plan sponsor must calculate the amount of withdrawal liability owed, give notice to the employer of the amount and demand payment. 29 U.S.C. § 1382. Section 1399 provides that the plan sponsor must notify an employer of the amount of its withdrawal liability and the schedule of payments "[a]s soon as practicable after an employer's complete or partial withdrawal." 29 U.S.C. § 1399(b)(1). The employer then has 90 days to ask the plan sponsor to review "any specific matter relating to the determination of the employer's liability and the schedule of payments." 29 U.S.C. § 1399(b)(2)(A)(i). Notwithstanding any request for review or demand for arbitration, withdrawal liability is payable in accordance with the schedule of payments established by the plan sponsor beginning no later than 60 days after the date of demand, 29 U.S.C. § 1399(c)(2). Upon default, the plan sponsor may require immediate payment of the outstanding amount of withdrawal liability, plus accrued interest, 29 U.S.C. § 1399(c)(5).

MPPAA requires that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). Arbitration may be initiated within 60 days after the earlier of (1) the date the employer is notified of the plan's decision upon review, or (2) 120 days after the date the employer requests such a review. *Id.* If no arbitration proceeding is initiated, the plan sponsor may bring an action in state or federal court to collect the amount due and owing, 29 U.S.C. §§ 1401(b)(1), 1451(a), including liquidated damages, interest, costs and attorneys fees. 29 U.S.C. § 1451.

## FACTS

Smart Modes is a California corporation no longer in business, which had its principal place of business in Los Angeles, California. The correct name of the company is Smart Modes of Calif. Inc., and it is undisputed that Madison 7 was a separate California corporation. Smart Modes was a member of the Los Angeles Coat & Suit

Manufacturers Association, a trade association which entered into collective bargaining agreements with local affiliates of the ILGWU. Jules Reinis was the president of the company. Smart Modes was obligated to contribute to the Fund on behalf of those employees covered by collective bargaining agreements negotiated and entered into by the Association and the ILGWU.

It is undisputed that Smart Modes resigned from the Association in 1978, that the collective bargaining agreement to which it was a party at that time terminated on May 31, 1979, and that, by 1979, Smart Modes had ceased all manufacturing operations. It is also undisputed, however, that the Fund continued to receive contributions from or on behalf of defendant through 1982. *See* Reply Affidavit of Sanford S. Stevens at ¶ 4.

By letter dated August 17, 1987, and addressed to Jules Reinis at his apartment in Los Angeles, the Fund notified defendant that the Fund had determined that Smart Modes had completely withdrawn from the Fund as of 1982, informed it that the Fund had calculated its withdrawal liability to be $150,671, set forth a payment schedule, demanded payment of the first payment, and notified it of its right to ask for review of the calculation and its right to seek arbitration. Mr. Reinis admits receiving the August 17, 1987 letter.

On October 30, 1987 the Fund gave written notice to Smart Modes that it had failed to make the required payment set forth in the August 17, 1987 letter. Smart Modes never responded to the August 17 or October 30 notices in any manner. Smart Modes never sought review by the Fund or through arbitration, and failed to make any of the scheduled payments.

On May 6, 1988, the Fund commenced the present action, and served the summons and complaint on Jules Reinis on May 9, 1988. The defendants answered on July 22, 1988, and some discovery has been completed.

## DISCUSSION

Summary judgment is appropriate where there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the "fundamental maxim" is that the court " 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987) (quoting *Heyman v. Commerce & Industry Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975)). "Moreover, in determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Id.* at 57.

In opposition to plaintiffs' motion, defendant does not raise genuine issues of material fact, but contends that plaintiffs' action is barred by the statute of limitations or the doctrine of laches, that it was not an employer on the effective date of MPPAA, and that the Fund did not properly notify it of its withdrawal liability.

### 1. Statute of Limitations and Laches

■ Defendant argues that plaintiffs' action is barred by the statute of limitations or the doctrine of laches. The applicable limitations period is set forth in § 1451(f) of MPPAA, which provides

An action under this section may not be brought after the later of—

(1) 6 years after the date on which the cause of action arose, or

(2) 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action; except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.

Defendant argues that plaintiffs' cause of action arose when the collective bargaining agreement to which Smart Modes was a party expired in 1979, and therefore this action fails under both of the periods set forth in § 1451(f). Plaintiffs respond that a cause of action for withdrawal liability

arises when an employer fails to make a payment demanded by the Fund, and therefore this action was brought well within either of those periods.

In *Joyce v. Clyde Sandoz Masonry*, 871 F.2d 1119 (D.C.Cir.1989), the Court of Appeals for the District of Columbia Circuit decided the precise issue presented here: "[w]hat acts or omissions trigger section 1451(f)'s time bar as applied to efforts to collect withdrawal liability?" In a well-reasoned and thorough opinion, the court held that a cause of action for collection of withdrawal liability under the MPPAA arises when the employer fails to make a required payment demanded by the plan, not upon the expiration of the collective bargaining agreement.

Defendant cites *Connors v. Mulvehill*, 679 F.Supp. 1071 (N.D.Ala.1988) in support of their argument that accrual of a cause of action runs from the date of the expiration of the collective bargaining agreement. In that case, however, the court held that it did not have jurisdiction, and indicated only in passing dicta that withdrawal liability under the MPPAA accrued when the collective bargaining agreements at issue expired.

Accordingly, the Court follows the holding in *Joyce* that the event which gives rise to an MPPAA collection claim is not the employer's complete withdrawal, but rather the employer's failure to honor the pension plan's demand for payment. In this case, then, the § 1451(f) limitation period began to run when Smart Modes failed to make the required payment demanded by the Plan. Since the Fund commenced this suit well within three years after defendant failed to make its required payments, defendant's statute of limitations defense is unfounded.

■ Defendant also argues that its assertion of the defense of laches should prevent entry of summary judgment against it. However, it is well-established that, where the applicable statute of limitations has not yet expired, the defense of laches is inapplicable. *See IAM National Pension Fund v. Cullman Industries, Inc.*, 640 F.Supp. 1284, 1286–87 (D.D.C. 1986). *See also United States v. Repass*, 688 F.2d 154, 158 (2d Cir.1988); *United*

*States v. Mack*, 295 U.S. 480, 489, 55 S.Ct. 813, 818, 79 L.Ed. 1559 (1935) ("[l]aches within the statute of limitations is no defense at law").

■ Defendant appears to make a somewhat related argument that plaintiffs' action should be barred because plaintiffs failed to make demand for payment "as soon as practicable," as required by the MPPAA. However, as will be shown *infra*, this is a defense that is required to be raised in arbitration and accordingly cannot be raised here.

*2. Arbitration Requirement*

■ Plaintiffs claim that the remainder of defendant's defenses cannot be raised because it failed to seek timely arbitration, relying on § 1401(a)(1), which requires that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." Defendant argues that it never became obligated to arbitrate because it was not an employer on the effective date of the MPPAA. The cases on point, however, reject that position.

It has become well-established that, under the remedial scheme enacted by Congress in the MPPAA, an employer's failure to seek timely arbitration of defenses to a pension plan's calculation of withdrawal liability precludes it from asserting those defenses, regardless of their merit, in an action to collect that liability. *ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879 (2d Cir.1988); *IAM National Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415, 417 (D.C.Cir.1987) ("'arbitrate first' is indeed a rule Congress stated unequivocally...."), *citing Grand Union Co. v. Food Employers Labor Relations Association*, 808 F.2d 66, 70 (D.C.Cir. 1987); *Teamsters Pension Trust Fund v. Allyn Transportation Co.*, 832 F.2d 502, 504 (9th Cir.1987).

In *Allyn Transportation*, the Ninth Circuit held that an employer which claimed it had ceased operations prior to the effective date of MPPAA could not raise that fact as a defense to the pension plan's suit in the

district court because it failed to demand arbitration after the plan demanded payment. The court specifically rejected the arguments made by defendant here. The rationale of *Allyn Transportation* was cited with approval by the Second Circuit in *Levy Bros.*, 846 F.2d at 885. As in that case, defendant here never sought arbitration of the plan's demand for payment and is therefore barred from raising in this Court its claim that it withdrew from the plan before MPPAA's effective date.

While this result may be harsh, the Second Circuit made clear in *Levy Bros.* that

> Congress intended that disputes over withdrawal liability would be resolved quickly, and established a procedural bar for employers who fail to arbitrate disputes over withdrawal liability in a timely manner.... If a party wishes to seek judicial resolution of its dispute without first submitting to arbitration it should seek declaratory and/or injunctive relief against the imposition of withdrawal liability before the time period to initiate arbitration expires.... The failure to seek such relief on a timely basis may, in some instances, lead to a harsh result, but the harshness of the default is largely "a self-inflicted wound."

*Id.* at 887 (citations omitted) (quoting *IUE AFL–CIO Pension Fund v. Barker & Williamson*, 788 F.2d 118 at 129 (3rd Cir. 1986)). Under the scheme enacted by Congress, when defendant received the Plan's demand for payment, which included notification of the right to seek review and arbitration, it was incumbent upon defendant to act. Defendant's failure to take any action whatsoever to preserve its defenses precludes it from raising those defenses now.[1]

Defendant also seeks to raise as a defense that the plan did not demand payment of withdrawal liability "as soon as practicable," as required by 29 U.S.C. § 1399(b)(1) of the statute. Defendant reads the court's discussion in *Levy Bros.* as suggesting that the issue of whether the Fund acted as soon as practicable need not be arbitrated and may be decided by the district court in determining whether the statutory conditions precedent to a suit for collection of withdrawal liability have been met. 846 F.2d at 887. It is apparent, however, that the court meant only to correct an erroneous interpretation made by the district court. In fact, the court held that Congress did not intend to impose a strict deadline for notifying employers of their withdrawal liability, but rather "intended that demand for withdrawal liability should be made 'as soon as practicable' as part of the overall scheme to provide for prompt payment of withdrawal liability." 846 F.2d at 887. *See also I.A.M. National Pension Fund v. Cullman Industries, Inc.*, 640 F.Supp. 1284, 1288 (D.D.C.1986) ("if Congress had wished to create a tangible notification deadline, it could, and would, have done so.").

In any event, the issue of whether the Fund's demand was made "as soon as practicable" is best suited for initial determination by the arbitrator, since it involves resolution of questions of fact, statutory interpretation and requires knowledge of, as the *Levy Bros.* court put it, the "detailed and demanding" procedures for identifying withdrawals and calculating and collecting withdrawal liability. Since the arbitration of these matters will likely "lead to the application of superior expertise," the "as soon as practicable" issue is controlled by the statutory direction to resort initially to arbitration. *Grand Union Co. v. Food Employers Labor Relations*, 808 F.2d 66, 70 (D.C.Cir.1987). *See also I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus.*, 727 F.2d 1204 (D.C.Cir.1984); *Retirement Fund of Fur Manufacturing Industry v. Getto & Getto, Inc.*, 714 F.Supp. 651, 653–55 (S.D.N.Y.1989). Indeed, in *Joyce* the court indicated its preference that the "as soon as practicable" determination be made by the arbitrator. 871 F.2d at 1127.

### 3. Notice of Liability

■ Finally, defendants suggest that the Fund's notice of withdrawal liability to de-

---

1. The cases relied on by defendants on this issue are distinguishable. In those cases the courts ruled that failure to demand arbitration was excusable because the defenses at issue did not exist at the time. *See Connors v. Economy Building Systems, Inc.*, 651 F.Supp. 849 (D.D.C. 1986); *Central States Pension Fund v. 888 Corp.*, 813 F.2d 760 (6th Cir.1987).

fendant was insufficient. It is undisputed that the notice was sent to the residence of Jules Reinis, who was president of Smart Modes while it was in operation. Defendant does not dispute that Mr. Reinis received the notice. Accordingly, the notice was sufficient. *Debrecini v. George Lamoureux & Co.*, 629 F.Supp. 598, 601 (D.Mass.1986).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted. Plaintiff is ordered to submit a proposed judgment, including interest, liquidated damages, costs and attorneys' fees, on 5 days notice to defendant within 10 days of the entry of this opinion, and defendant shall file any objections thereto within ten days thereafter.