**I.L.G.W.U. NATIONAL RETIREMENT FUND; Irwin Solomon and Joseph Moore and their successors as Trustees of the I.L.G.W.U. National Retirement Fund, Plaintiffs,**

v.

**VACO HOLDING CO., a partnership consisting of Salvatore J. Vitale and Seymour Cohen; Salvatore J. Vitale, individually, Seymour Cohen, individually, and In Scene Ltd., Defendants.**

95 Civ. 10368 (DAB).

United States District Court,
S.D. New York.

Jan. 7, 1997.

Broach & Stulberg, LLP, New York City (Jane Lauer Barker, of counsel), for Plaintiffs.

Silverberg Stonehill Goldsmith, P.C., New York City (Clyde M. Schaefer, of counsel), for Defendants.

### MEMORANDUM and ORDER

BATTS, District Judge.

Plaintiffs, I.L.G.W.U. National Retirement Fund ("the Fund") and its trustees, bring this action to compel the Defendants to pay the withdrawal liability that arises when an employer withdraws from a retirement pension plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381, *et seq.*, and to remedy violations of state law. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Defendants, Salvatore J. Vitale ("Vitale") and Seymour Cohen ("Cohen"),[1] have moved to dismiss the action, stating that the Plaintiffs' claims were not properly commenced within the statute of limitations as provided for in the MPPAA, 29 U.S.C. § 1451(f) and in the New York Civil Practice Law and Rules §§ 213(8), 203(g). For the reasons stated below, Defendants' motion is denied.

---

1. The motion is made on behalf of these individual Defendants. However, the Court will address the statute of limitations arguments as they apply to the now defunct, Defendant Vaco Holding Co. ("Vaco"), because they are closely linked.

## I. BACKGROUND

Defendants, Vitale and Cohen, were sole officers and 50% shareholders of two New York corporations, Leslie Ann Fashions, Inc. ("Leslie Ann") and Plenti–Ful Fashions Ltd. ("Plenti–Ful")[2] which manufactured women's clothing. (Compl. ¶¶ 9–10; Schaefer Aff. ¶¶ 5–6.) Leslie Ann was a party to a collective bargaining agreement with Plaintiff, I.L.G.W.U. National Retirement Fund, obligating Leslie Ann to make contributions to the Fund on behalf of some of its employees. (Compl. ¶ 13.)

The Fund was established to maintain a retirement income plan (the "Plan") for employees. Plaintiffs, Irwin Solomon and Joseph Moore, are two members of the Plan's Board of Trustees. (Compl. ¶¶ 4–6.)

Both Plenti–Ful and Leslie Ann ceased doing business and became defunct in February and May of 1988 respectively. (Schaefer Aff. ¶¶ 5–6.) During this time Leslie Ann failed to satisfy its obligations to the Plan, thereby completely withdrawing from it. (Compl. ¶ 14.) At the time of its withdrawal, Leslie Ann's withdrawal liability to the Fund was determined to be $1,178,023.00. (Compl. ¶ 15; Schaefer Aff. ¶ 8.) By letter dated November 8, 1989, the Fund notified Leslie Ann of its withdrawal liability,[3] presented a payment schedule, and requested that the first payment be made by December 8, 1989. (Compl. ¶ 16.) On December 11, 1989, the Fund notified Leslie Ann that this first required payment was overdue and demanded that Leslie Ann make the payment within 60 days of the notice, or it would be default. (Barker Aff. ¶ 6.) Leslie Ann failed to comply with the Fund's demand, and on February 9, 1990, defaulted on its payment.

(Compl. ¶ 16.) The Fund, on March 26, 1990, commenced an action against Leslie Ann and Plenti-ful, the only commonly-controlled entity of Leslie Ann which the Fund was then aware, entitled, *I.L.G.W.U. Nat'l Retirement Fund, et al. v. Leslie Ann Fashions, Inc. and Plenti-ful Fashions Ltd.*, 90 Civ. 2063 (S.D.N.Y.), seeking judgment for the withdrawal liability, accrued interest, liquidated damages and attorney's fees and costs. (Barker Aff. ¶ 7; Compl. ¶ 17.) When the defendants in that action failed to answer, a default judgment was entered against them on July 2, 1990, and the Fund was granted full judgment in the amount of $1,329,975.39, of which neither Leslie Ann nor Plenti-ful has made any payments. (Compl. ¶¶ 18–19; Schaefer Aff. ¶ 10.)

After entry of the default judgment, the former attorneys for the Fund—Milgram, Thomajan & Lee ("MT & L")—sought to commence proceedings to collect the judgment. (Barker Aff. ¶ 8.) On July 19, 1990, MT & L mailed a copy of the default judgment to the attorneys for Leslie Ann and Plenti-ful and asked to schedule Defendants' depositions. (*Id.*) After some delay,[4] a deposition was scheduled for November 15, 1990, at which Vitale appeared on behalf of Leslie Ann and Plenti-ful. (Barker Aff. ¶ 11; Schaefer ¶ 11.) During the deposition, Vitale testified that he and Cohen individually owned a warehouse building in Pennsylvania from which Leslie Ann and Plenti-ful shipped their garments. (Barker Aff. ¶ 11; Schaefer Aff. ¶ 13.) Vitale testified that the warehouse building had been sold prior to the time that Leslie Ann and Plenti-ful went out of business, but could not recall the date of the sale. (Barker Aff. ¶ 11.) MT & L re-

---

2. Neither of these entities are a party to the current action.

3. Prior to incurring withdrawal liability, Leslie Ann had requested from the Fund an estimate of its withdrawal liability on at least two occasions. On or about September 14, 1983, the Fund provided a statement of Leslie Ann's potential employer withdrawal liability in response to a request from a representative of Leslie Ann. Vitale, by letter dated April 22, 1985, again requested an estimate of Leslie Ann's withdrawal liability from the Fund. (Compl. ¶ 27.) The record does not indicate whether this request was ever answered.

4. After hearing no response from the Defendants' attorneys to its July 19, 1990 request for deposition, MT & L, on September 6, 1990, sent another letter requesting a date to conduct the depositions. Still not hearing from the Defendants' attorneys, Silverberg, Stonehill, and Goldsmith, MT & L learned that the attorney handling the Defendants' case had left the firm. By letter dated October 5, 1990, MT & L wrote to the firm requesting that a "responsible" attorney call and make arrangements to proceed with post-judgment discovery. (Compl. ¶ 10)

quested a copy of the closing statement for the sale of the warehouse building and the attorneys for the Defendants agreed to provide it. (*Id.*)

Despite numerous requests,[5] the Fund did not receive a copy of the closing statement until February 1, 1994. (Barker Aff. ¶ 14.) The statement revealed that, contrary to Vitale's deposition testimony, the warehouse building was not owned by Vitale and Cohen individually, but by Defendant Vaco Holding Co., a general partnership in Pennsylvania of which Vitale and Cohen were the sole partners. (*Id.*; Compl. ¶ 7.) In addition, the statement revealed that the warehouse building was sold on May 13, 1988, during the time Leslie Ann had ceased operating, and not before, as Vitale had testified. (Barker Aff. ¶ 14.) A copy of the 1988 tax return for Vaco showed that the proceeds of the sale of the warehouse building amounted to $318,-855.00, of which $235,965.00 was distributed to Vitale and Cohen.[6] (Compl. ¶¶ 28–29; Barker Aff. ¶ 15.) In Scene Ltd. ("In Scene") is named as a Defendant in this action because Vitale and Cohen were allegedly officers and 50% shareholders of the company which dissolved on May 12, 1989. (Barker Aff. ¶ 4; Compl. ¶ 11.)

The Fund initiated this action[7] on December 8, 1995, alleging that Defendants Vaco and In Scene are trades or businesses under common control with Leslie Ann and, therefore, jointly and severally liable for the withdrawal liability of Leslie Ann. (Compl. ¶¶ 20–25.) As general partners of Vaco, Vitale and Cohen are Defendants for the alleged liability of the partnership and for receiving the proceeds of the sale of the warehouse building.

5. Between the period of December 14, 1990, and January 25, 1994, the Defendants' attorneys, Silverberg Stonehill Goldsmith, were asked on seven different occasions by letter and once by telephone to provide the copy of the closing statement for the sale of the warehouse building. (Barker Aff. ¶¶ 12–13.)

6. The Fund's attorneys had previously obtained the tax returns for Plenti-ful for tax years ending October 31, 1986, through March 31, 1989, and the tax returns for Leslie Ann for tax years ending May 31, 1987, through the 1988 calendar year. Those tax returns did not provide any information as to the existence of other trades or

On May 8, 1996, Defendants Vitale and Cohen moved to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6), claiming that the Fund's lawsuit is barred by the applicable statute of limitations.

## II. DISCUSSION

### A. Applicable Standard

"On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (1995) (citations omitted). "The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Walker v. City of N.Y.*, 974 F.2d 293, 298 (2d Cir.1992) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119 (2d Cir.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957))), *cert. denied*, 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993).

### B. The ERISA Statute

"In order to prevent employers from withdrawing from multiemployer funds before contributions are sufficient to cover vested benefit, Congress enacted the" MPPAA in 1980, amending ERISA. *Board of Trustees v. H.F. Johnson, Inc.*, 830 F.2d 1009 (9th Cir.1987); *ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 880–81 (2d Cir.1988). An employer who withdraws

businesses that Vitale and Cohen may have been involved with, including Defendants Vaco or In Scene, Ltd. (Barker Aff. ¶ 9.)

7. The Plaintiffs allege nine causes of action. Count One and Two are identical in substance and allege, Vaco and In Scene, respectively, are joint and severally liable for the withdrawal liability of Leslie Ann. Count Three alleges that the sale of the warehouse proceeded in order to evade and avoid the withdrawal liability. Counts Four through Nine allege both joint and several liability and state law claims against Cohen and Vitale.

from a multiemployer pension plan is assessed with withdrawal liability, rendering the employer responsible for its proportionate share of the plan's unfunded vested benefits. 29 U.S.C. §§ 1381, 1391. The amount of the withdrawal liability is based upon the date that the employer completely withdraws from a plan. 29 U.S.C. §§ 1383, 1391. An employer is deemed to have completely withdrawn from a plan when it either permanently ceases to have an obligation to contribute to the plan, or permanently ceases all covered operations under the plan. 29 U.S.C. § 1383. *Levy*, 846 F.2d at 881; *ILGWU Nat'l Retirement Fund v. Smart Modes of Cal., Inc.*, 735 F.Supp. 103, 104 (S.D.N.Y. 1990). All those entities under common control are liable for a single entity's withdrawal liability.

Upon employer withdrawal, the plan sponsor must determine the extent of the withdrawal liability, notify the employer of the amount of the liability, and demand payment. 29 U.S.C. § 1382. Under MPPAA, the plan sponsor is required to notify the employer of the amount of the withdrawal liability and the schedule of payments "[a]s soon as practicable after an employer's complete ... withdrawal." 29 U.S.C. § 1399(b)(1). Withdrawal liability is due in accordance with the payment plan set out by the plan sponsor beginning no later than 60 days after the date of demand. 29 U.S.C. § 1399(c)(2). If the employer fails, within 60 days, to satisfy a payment and is notified of such failure, it is deemed to be in default and the plan sponsor is authorized to "require immediate payment of the outstanding amount of an employer's withdrawal liability." 29 U.S.C. § 1399(c)(5)(A); *Smart Modes*, 735 F.Supp. at 104.

### 1. *Plaintiffs' Claim Against Vaco*

Defendants Vitale and Cohen contend that the Fund's action seeking to hold them individually liable for the withdrawal liability of Leslie Ann lacks merit because as stockholders and officers of the corporation they cannot be held personally liable for such contributions. The Fund, however, states that the action against Vitale and Cohen is not based on the Defendants' positions as corporate officers or shareholders of Leslie Ann, but as general partners of Vaco, a commonly controlled trade or business with Leslie Ann.

### a. **Commonly Controlled**

■ Under 29 U.S.C. § 1301(b)(1) of ERISA and applicable regulations at 26 C.F.R. §§ 1.414(c)–1 through 1.414(c)–5, all "trades or businesses under common control" whether incorporated or not, are treated as a single employer for purposes of collecting withdrawal liability. Each member of a commonly controlled group of trades or businesses is liable for the withdrawal liability of any other member of the group. *NYSA–ILA Pension Trust Fund v. Garuda Indonesia*, 7 F.3d 35, 37 (2d Cir.1993), *cert. denied*, 510 U.S. 1116, 114 S.Ct. 1065, 127 L.Ed.2d 384 (1994); *Board of Trustees v. Canny*, 900 F.Supp. 583, 589 (N.D.N.Y.1995); *Central States, S.E. and S.W. Areas Pension Fund v. Mississippi Warehouse Corp.*, 853 F.Supp. 1053, 1057 (N.D.Ill.1994). General partnerships qualify as trades or businesses that can be liable for the withdrawal liability of a commonly controlled party withdrawing from an ERISA pension plan. *Johnson*, 830 F.2d 1009; *United Food and Commercial Workers Union v. Progressive Supermarkets*, 644 F.Supp. 633, 640 (D.N.J.1986).

■ A business is commonly controlled if the same five or fewer persons own a controlling interest (*i.e.*, 80%) in each business and, considering only the identical ownership in each entity, the relevant persons are also in effective control (*i.e.*, 50% interest) of each entity. Under this test, Vaco, a general partnership, consisting of only Vitale and Cohen as partners, is commonly controlled with Leslie Ann, a corporation with the same two people as equal shareholders.[8]

8. The Defendants assert that the officers of In Scene were Salvatore Vitale, Jr. and Peter Casciola (Vitale's son-in-law), and not Vitale and Cohen as the Fund claims. If substantiated, the Defendants' claims as to the composition of In Scene may remove the entity from being deemed under the common control of Leslie Ann and Vaco. However, because the Defendants have neglected to submit any papers verifying their claims, the Fund's allegations as to In Scene remain valid at this time.

## b. Statute of Limitations

Defendants assert that the Fund's action seeking to hold Vaco liable for Leslie Ann's withdrawal liability should be dismissed because it was not filed within the statute of limitations provided for in the MPPAA. The applicable provision reads as follows:

An action under this section may not be brought after the later of—

(1) 6 years after the date on which the cause of action arose, or

(2) 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action; except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.

29 U.S.C. § 1451(f). Defendants contend that under Section 1451(f)(1), a plaintiff's cause of action arises when an employer completely withdraws from the plan, thereby incurring withdrawal liability. Because the Defendants assert that Leslie Ann completely withdrew in approximately May 1988, the Plaintiffs' suit, initiated on December 8, 1995, does not satisfy the six year statute of limitations requirement in Section 1451(f)(1). The Plaintiffs, however, contend that the cause of action arises when the employer fails to make a payment demanded by the fund, and, therefore, its action satisfies the six year time period.

In *Smart Modes,* 735 F.Supp. 103, the court held that a cause of action to collect withdrawal liability under MPPAA does not arise upon the employer's withdrawal from the plan, but rather upon the time the employer fails to make a payment as demanded by the plan. *Id.* at 105; *Joyce v. Clyde Sandoz Masonry,* 871 F.2d 1119, 1122 (D.C.Cir.), *cert. denied,* 493 U.S. 918, 110 S.Ct. 280, 107 L.Ed.2d 260 (1989); *Central States,* 853 F.Supp. at 1057. Under Section 1382, a plan sponsor can demand payment from a withdrawing employer after providing the latter with proper notice. If the employer fails to make payment within 60 days after the plan sponsor demands payment, it is deemed to be in default. Only then does the statute of limitations begin to run.

■ Here, Leslie Ann's first payment was due on December 8, 1989. When Leslie Ann failed to make this payment, the Fund, on December 11, 1989, notified Leslie Ann that it was overdue and demanded payment within 60 days. Accordingly, under Section 1451(f), the statute of limitations period began to accrue on February 9, 1990, 60 days after the December 11, 1989 notice. Since the Fund filed its claim on December 8, 1995, Plaintiffs' claims against Vaco and In Scene are not barred by the statute of limitations.[9]

### 2. *Plaintiffs' Claim against Vitale and Cohen*

Having found that the Plaintiffs' claim against Vaco falls within the statute of limitations, Plaintiffs' claims against Vitale and Cohen as general partners of Vaco, also fall within the statute of limitations.[10]

## C. Pendent State Claims

Defendants also contend that the Fund's state claims which assert that Vaco's assets were improperly transferred to Vitale and Cohen under New York State's Debtor and

---

**9.** The Court having found that Plaintiffs may proceed against all the Defendants, it is not necessary to make a separate finding that the Plaintiffs can move forward against the proceeds from the sale of the warehouse.

**10.** The withdrawal liability imposed on Vaco may extend to its general partners, Vitale and Cohen. Generally, absent any limitation in the partnership agreement, partners are personally liable for obligations of the partnership. *Johnson,* 830 F.2d at 1015.

Under Section 1405(c) of ERISA, an individual partner liable for the obligations of a general partnership can exempt property that is protected under Section 522 of Title 11 or other similar provisions of law, from being subject to the enforcement of such liability. Other personal non-business assets of an individual which are not protected under these provisions are subject to the partner's withdrawal liability. 29 U.S.C. § 1405(c); *Johnson,* 830 F.2d at 1014. Here, Vitale and Cohen can be held personally liable for Vaco's withdrawal liability, subject to the exemption provided by Section 1405(c). *Johnson,* 830 F.2d at 1015; *United Food,* 644 F.Supp. at 642.

Creditor Law are barred by relevant statute of limitations. New York Civil Practice Law and Rules § 213(8) reads as follows:

§ 213. The following actions must be commenced within six years:

(8) An action based upon fraud; the time within which the action must be commenced shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence, have discovered it.

Clearly, whether the six years is counted from the November 1990 Vitale deposition or from 1994 when the Plaintiffs received the closing statement, the action falls within a six-year statute of limitations.

Section 203(g) of the New York Civil Practice Law and Rules reads as follows:

§ 203(g). Time Computed From Actual or Imputed Discovery of Facts.

where the time within which an action must be commenced is computed from the time when facts were discovered or from the time when facts could, with reasonable diligence have been discovered, or from either of such times, the action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer.

The sale of the warehouse was transacted on May 13, 1988. The Defendants argue that the Fund knew or should have known of any potential cause of action it had against Vaco when it conducted a deposition upon Vitale

on November 15, 1990. Because more than two years have passed between the time of the Vitale deposition and the commencement of this action, the Defendants assert a statute of limitations defense.

The Fund contends that the earliest possible date it acquired or should have acquired knowledge about a possible cause of action was February 1, 1994, the date on which they received the closing statement regarding the sale of the warehouse building.

Based on the record, the Court agrees with the Plaintiffs. In his deposition, Vitale denied that a corporation owned the Pennsylvania warehouse building, claiming that he and Cohen owned the property individually. Vitale also testified that the Vaco warehouse was sold prior to the time Leslie–Ann and Plenti–Ful ceased business, when in reality the events occurred approximately at the same time.[11] From the deposition, the Fund lacked many of the essential facts regarding the sale of the warehouse including the actual date of its sale, which prevented the Fund from obtaining circumstantial evidence as to the possible purpose of the sale. Rather than being able to make the connection between the timing of the sale and the occurrence of withdrawal liability by Leslie Ann, the Fund was led to believe by Vitale that the sale had occurred prior to the time Leslie Ann ceased doing business. Not knowing that Vaco, rather than Vitale and Cohen, owned the warehouse prevented the Fund from knowing about the existence of an essential party to this action.

Until this information was provided in February 1994, the Fund could not have

11. The Vitale deposition reads as follows:

Q: Let's talk about the New York and Pennsylvania address. With respect to those two places, could you tell me whether the company owned that space or whether it leased it?

A: We leased 36th Street. Sy [Cohen] and I owned the building in Pennsylvania.

Q: So that the two of you individually owned that building in Pennsylvania?

A: Correct

Q: It was not owned by a corporation?

A: No. . . .

Q: Could you tell me when did the two of you sell that building?

A: Well, we stopped shipping out of there because it became economically impossible to operate because it was a big place, and we—our volume had reduced and reduced, so we tried shipping out of a contractor for a while, and then we took the shipping back to New York.

After that we sold the building. We put it up for sale and got rid of it.

Q: When did you—

A: I don't recall exactly when.

Q: Was it in the eighties?

A: Yes.

Q: Was it prior to the time of Leslie–Ann and Plenti–Ful Fashions going out of business?

A: Yes. I don't recall exactly when. . . .

acquired actual knowledge of this possible cause of action against Vaco. Nor is it reasonable to believe that the Fund should have acquired actual knowledge prior to February 1994. Despite the numerous requests by the Fund, the Defendants did not provide this information until three and one-half years after the Fund's initial request.

■ Thus, because February 1994 was the time that the Fund acquired actual knowledge or should have acquired knowledge regarding the sale of the warehouse property, the Fund's claim as to the proceeds from that sale is not barred by the statute of limitations whether it is found that a six year or a two year statute of limitation applies.

## III. CONCLUSION

On the facts provided to the Court and for the foregoing reasons, Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is denied.

SO ORDERED.