The **PAVERS AND ROAD BUILDERS DISTRICT COUNCIL PENSION FUND BY** Joseph **MONTELLE**, as **Fund Administrator, Plaintiff,**

v.

**NICO ASPHALT PAVING, INC., Defendant.**

**15–CV–3994 (WFK)(VMS)**

United States District Court, E.D. New York.

Signed 03/31/2017

Michael Levy, Westerman Ball Ederer Miller& Sharfstein, Uniondale, NY, Pro Se.

Mark Ginsberg, Michelle Adams Callner, Barbara Mehlsack, Gorlick, Kravitz & Listhaus P.C., New York, NY, for Plaintiff.

Michael T. Scaraggi, Oransky, Scaraggi & Borg, P.C., West Caldwell, NJ, for Defendant.

## DECISION & ORDER

### HON. WILLIAM F. KUNTZ, II, UNITED STATES DISTRICT JUDGE

Pavers and Road Builders District Council Pension Fund (the "Fund" or "Plaintiff") is a multiemployer benefit plan constituted under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"), Pub. L. No. 96–364, 94 Stat. 1208 (1980). The Fund filed suit seeking to collect $614,960.00 in withdrawal liability, plus certain amounts of interest and liquidated damages, from Nico Asphalt Paving, Inc. ("Nico" or "Defendant") pursuant to § 4301(a) of ERISA, 29 U.S.C. § 1451(a). *See* Compl., ECF No. 1. Plaintiff now seeks summary judgment on Nico's liability, arguing the relevant facts are undisputed and Defendant waived its affirmative defenses by failing to initiate arbitration, as required under the MPPAA. *See* Mem. Supp. Pl.'s Mot. Summ. J. ("MSJ"), ECF No. 27-2; Pl.'s Reply Mem. ("Reply"), ECF No. 29. In response, Defendant argues, *inter alia*, that Plaintiff's claims are barred by laches and that it has not waived its defenses by not initiating arbitration. *See* Def.'s Mem. Opp. to MSJ ("Opp.), ECF No. 28. For the reasons discussed below, Plaintiff's motion is GRANTED.

## BACKGROUND

Under the Local Rules of this Court, each party to a summary judgment motion is required to submit a statement of material facts. E.D.N.Y. R. 56.1(a) & (b). Rather than reiterating undisputed facts, the non-moving party is tasked with responding to each of the facts offered by the moving party; each fact that is not "specifically controverted" may be deemed admitted. *Id.* at 56.1(b) & (c). Defendant, the non-moving party here, failed to file a Rule 56.1 statement, and therefore the facts within Plaintiff's Statement of Undisputed Material Facts ("56.1 Statement"), ECF No. 27–1, are deemed admitted. *See Gadsden v. Jones Lang Lasalle Ams., Inc.,* 210 F.Supp.2d 430, 438 (S.D.N.Y. 2002) (Motley, J.) (noting "Courts in this circuit have not hesitated to deem admitted the facts in a movant's Local Civil Rule 56.1 Statement that have not been controverted by a Local Civil Rule 56.1 statement from the nonmoving party" and citing cases). The Court adopts as Plaintiff's 56.1 Statement as the factual background and presumes familiarity with it for the purposes of this motion, with the following additions.

First, on May 10, 2006, the Board of Trustees of the Pavers and Road Builders District Council Pension, Welfare, and Annuity Funds (the "Funds") held a meeting where a consultant presented on withdrawal liability calculations as to 21 employers that had withdrawn from the Funds as of December 31, 2004. Ex. A to Scaraggi Decl. at 10, ECF. No. 28–1. After a motion was made to "commence demand letters," "there was a deadlock vote" between the Union and Management Trustees. *Id.* The Trustees then "agreed to arbitrate. *Id.*

■ Second, the Court takes judicial notice of the fact that, between February 2008 and June 2014, the Funds' Board of Trustees was engaged in litigation arising out of the deadlock and other difficulties between the Union and Management Trustees.[1] *See* Compl., *Masino v. Fasulo*, 08–cv–0462 (E.D.N.Y. Feb. 1, 2008) (ECF No. 1); Final J., 08–cv–0462 (E.D.N.Y. June 19, 2014) (Chen, J.) (unnumbered). One consequence of the litigation was the Board of Trustees was reconstituted to allow the replacement of certain Management Trustees. *See* Report & Recommendation ("R & R"), 08–cv–0462 (E.D.N.Y. March 1, 2013) (ECF No. 110) (Levy, M.J.); Order Adopting R & R, 08–cv–0462 (E.D.N.Y. April 19, 2013) (unnumbered). The R & R acknowledged the "history of animosity between the Union Trustees and the Employer Trustees," which had "had a deleterious impact on the Funds' ability to function." R & R at 3.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the "Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation and internal quotation marks omitted). The district court's role is not to weigh the evidence or determine the truth of the matter, but rather to answer "the threshold inquiry of whether there is the need for a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must therefore determine if "a rational trier of fact [could] find for the non-moving party." *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

If the moving party carries its preliminary burden, the burden shifts to the non-movant to raise the existence of "specific facts showing that there is a genuine issue for trial." *Cityspec, Inc. v. Smith*, 617 F.Supp.2d 161, 168 (E.D.N.Y. 2009) (Wexler, J.) (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348). "The mere existence of a scintilla of evidence" in support of the non-movant will be insufficient to defeat a summary judgment motion. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Rather, the non-moving party must make a showing sufficient to establish the existence of each element constituting its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."). Conclusory statements, devoid of specifics, are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

## STATUTORY BACKGROUND

The MPPAA was enacted by Congress in 1980 to "improve retirement income security under private pension plans by

---

1. The Federal Rules of Evidence provide that courts may, on their own or at a party's request, "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)–(c). Matters of public record are suitable for judicial notice. *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).

strengthening the funding requirements for those plans." Pub. L. No. 96–364. One way the statute ensures multiemployer pension plans are adequately funded is by requiring "an employer that withdraws from a multiemployer pension plan [to] pay its proportionate share of the plan's unfunded vested employee benefits," which is referred to as "withdrawal liability." *Bowers v. Andrew Weir Shipping, Ltd.*, 27 F.3d 800, 803 (2d Cir. 1994) (citing 29 U.S.C. §§ 1381, 1391). The imposition of withdrawal liability is governed by a comprehensive statutory scheme that requires any disputes over an employer's withdrawal liability be arbitrated in the first instance. 29 U.S.C. § 1401(a)(1); *see also ILGWU Nat. Ret. Fund v. Levy Bros. Frocks*, 846 F.2d 879, 886 (2d Cir. 1988) (finding "the arbitration provisions of MPPAA do not constitute an absolute bar to federal jurisdiction, but instead constitute an exhaustion of administrative remedies requirement").

"As soon as practicable" after an employer withdraws from a multiemployer pension plan, the plan's trustees or other governing body must determine the extent of the employer's withdrawal liability, provide the employer with a "schedule for liability payments," and demand payment in accordance with the schedule." 29 U.S.C. § 1399(b)(1). The employer may, within 90 days, ask the plan to review the liability determination, request more information about it, or otherwise challenge the withdrawal liability calculation, *id.* § 1399(b)(2), but the employer is obligated to begin payment "in accordance with the schedule set forth by the plan . . . no later than 60 days after the date of the demand *notwithstanding any request for review*," *id.* § 1399(c)(2) (emphasis added). If the

employer defaults on its scheduled payments, the plan may "require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest." *Id.* § 1399(c)(5).

▮ Where there is a dispute about withdrawal liability, either party may initiate arbitration by the earlier of: (1) 60 days after the plan's notification to the employer of its decision as to the employer's request for review, or (2) 180 days after the employer's request for such a review, even if the plan has not replied. *Id.* § 1401(a). Alternatively, the parties may jointly initiate arbitration within 180 days of the initial notice of liability. *Id.* Under regulations issued by the Pension Benefit Guaranty Corporation ("PBGC") pursuant to the MPPAA, an employer's notice of initiation of arbitration must include a "statement that it disputes the plan sponsor's determination of its withdrawal liability and is initiating arbitration" and must have a "copy of the demand for withdrawal liability and any request for reconsideration, and the response thereto" attached.[2] 29 C.F.R. § 4221.3(d). If arbitration is not commenced within the statutory timeframe, the plan's determination of the employer's withdrawal liability becomes final and must be paid in accordance with the schedule set forth in the initial notice. 29 U.S.C. § 1401(b)(1). Failure to timely initiate arbitration may thus bar the employer from challenging its liability in any forum. *See, e.g., N.Y. State Teamsters Conference Pension & Ret. Fund v. McNicholas Transp. Co.*, 848 F.2d 20, 23 (2d Cir. 1988) (finding employer's "withdrawal liability ha[d] become fixed" where employer failed to timely initiate arbitration despite employer's contention a statutory exemption applied).

---

**2.** As Plaintiff notes, arbitration can also proceed according to the procedures set forth by the AAA/IFEBP Multiemployer Pension Plan Arbitration Rules, which require a similarly

formal notice of initiation. Reply at 7–8 (citing *Arbitration of Disputes in Multiemployer Plans; PBGC–Approved Arbitration Procedure*, 50 FR 38046–03 (Sept. 19, 1985)).

**ANALYSIS**

The undisputed facts clearly establish Nico's liability under the MPPAA; the sole issue in dispute is whether Nico's affirmative defenses or counterclaims may still be litigated. Specifically, Nico is an employer that contributed to the Fund until July 2005, when the collective bargaining agreement that had obligated it to do so was terminated. 56.1 Statement ¶¶ 8–16. Eight years later, on July 29, 2013, the Fund notified Nico it owed $614,960.00 in withdrawal liability and that its first payment was due within 60 days. *Id.* ¶¶ 19–20. This delay in notifying Nico of its withdrawal liability may have been due to the ongoing deadlock and litigation between members of the Funds' Board. *See supra* at 377. On September 23, 2013, Nico sent the Fund a letter indicating "it believed that the Withdrawal Liability Notice had been retracted" because it was aware the Fund had withdrawn notices to other employers. *Id.* ¶ 23, *see also* Ex. H to Mehlsack Decl., ECF No. 27–3. On October 24, 2013, the Fund sent Nico an amended notice indicating the withdrawn notices Nico had referred to did not impact Nico's withdrawal liability, reiterating Nico's withdrawal liability obligation, and restarting the statutory time period in which Nico could take action on the notice. 56.1 Statement ¶¶ 24–26; *see also* Ex. I to Mehlsack Decl. On November 25, 2013, and again on December 16, 2013, Nico submitted a request for a review, which specifically asked that the Fund review certain aspects of its withdrawal liability calculations and provide Nico with certain related documents. 56.1 Statement ¶¶ 27–28; *see also* Exs. J & K to Mehlsack Decl. Nico reserved its right to "seek arbitration or judicial relief" in each of its letters. Exs. J & K to Mehlsack Decl. The Fund replied to Nico's request for review on February 27, 2014. 56.1 Statement ¶ 31; Ex. L to Mehlsack Decl. Nico replied to this letter on March 18, 2014 and, among other things, indicated

Nico would reach out regarding "a meeting date or fixing a date for arbitration." Ex. P to Mehlsack Decl. Nico never initiated arbitration in a manner consistent with 29 C.F.R. § 4221.3, and the statutory time period in which to do so has now lapsed. 56.1 Statement ¶¶ 41–43. Having failed to dispute the withdrawal liability calculation in arbitration or before this Court within the statutorily prescribed time period, Nico is now bound by it. *See Levy Bros. Frocks*, 846 F.2d at 887 ("If a party wishes to seek judicial resolution of its dispute without first submitting to arbitration it should seek declaratory and/or injunctive relief against the imposition of withdrawal liability *before the time period to initiate arbitration expires.* The failure to seek such relief on a timely basis may, in some instances, lead to a harsh result, but the harshness of the default is largely 'a self-inflicted wound.'" (citations omitted) (emphasis added)).

Nico makes three primary contentions as to why summary judgment should not be granted in favor of the Fund: (1) the Fund's trustees failed to calculate Nico's withdrawal liability "as soon as practicable," as required under 29 U.S.C. § 1399(b)(1); (2) in failing to do so, the Fund's trustees breached their fiduciary obligations to Nico; and (3) the Fund's efforts to enforce withdrawal liability against Nico are barred by the doctrine of laches.

Nico's first two arguments are easily disposed of. First, the Supreme Court explicitly found in *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corporation of California* that Congress had adopted the "as soon as practicable" language in order to "afford [plans] some flexibility in gathering the information and performing the complex calculations necessary to make that assessment," and it declined to read this language as requiring the initial calculation to be made within a

particular time period. 522 U.S. 192, 205, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997). The Court then found the six-year statute of limitations set forth in the MPPAA began to run from the day "the employer fails to make a payment on the schedule set by the fund" rather than from the date of withdrawal. *Id.* at 195, 118 S.Ct. 542. The Court suggested employers who "believe[ ] the trustees have failed to comply with their 'as soon as practicable' responsibility" should "assert that violation as a laches objection at an arbitration contesting the withdrawal liability assessment." *Id.* at 205, 118 S.Ct. 542. Consequently, Defendant's objection to the timeliness of the withdrawal notice is subsumed by its laches defense.

■ Second, as Plaintiff correctly notes, employers do not have standing to raise breach of fiduciary duty claims under ERISA's civil enforcement provisions. *See* 29 U.S.C. § 1132(a); *see also Tuvia Convalescent Ctr., Inc. v. Nat'l Union of Hosp. & Health Care Emps.*, 717 F.2d 726, 730 (2d Cir. 1983) (holding employer "did not have standing to bring an action [against union benefit plans] under the jurisdictional grants of section 1132 [of ERISA]"). As Defendant provides no other statutory basis for its breach of fiduciary duty claim, this claim fails.

■ Ultimately, then, Defendant's arguments boil down to whether it can present its laches defense at this stage. Laches is an equitable defense that applies where "a plaintiff unreasonably delayed in initiating an action and a defendant was prejudiced by the delay." *Robins Island Preservation Fund, Inc. v. Southold Dev. Corp.*, 959 F.2d 409, 423 (2d Cir. 1992). As the Supreme Court held in *Bay Area Laundry*, however, an employer's laches claim is properly raised in arbitration. 522 U.S. at 205, 118 S.Ct. 542. A number of

courts have affirmed this holding, specifically finding employers seeking to challenge the timeliness of a withdrawal liability assessment must raise that issue in arbitration. *See, e.g., Giroux Bros. Transp. v. New England Teamsters & Trucking Indus. Pension Fund*, 73 F.3d 1, 4 (1st Cir. 1996) ("However, any dispute regarding the timeliness of the Fund's demand under § 1399(b)(1) is statutorily committed to arbitration in the first instance."); *ILGWU Nat. Ret. Fund v. Smart Modes of Cal., Inc.*, 735 F.Supp. 103, 107 (S.D.N.Y. 1990) (Patterson, J.) (finding "the 'as soon as practicable' issue is controlled by the statutory direction to resort initially to arbitration"). This is true even where the employer seeks to raise equitable defenses. *See, e.g., Amalgamated Lithographers of Am. v. Unz & Co. Inc.*, 670 F.Supp.2d 214, 229 (S.D.N.Y. 2009) (McMahon, J.) (finding employer had "waived its right to present any defenses that it could have presented had it sought arbitration," including its laches defense, "by failing to comply with the statutory prerequisites for demanding arbitration"); *NYSA–ILA Pension Trust Fund v. Am. Stevedoring, Inc.*, 12–CV–2506, 2013 WL 1234957, at *3 (S.D.N.Y. Mar. 26, 2013) (Crotty, J.) (finding "unclean hands" defense suitable for arbitration under the MPPAA). In failing to properly initiate arbitration or to initiate any action challenging the Fund's calculation of withdrawal liability within the statutorily prescribed time period, Nico has thus waived its right to raise a laches defense in this forum.[3] Accordingly, Nico is unable to present any meaningful issues of material fact that would subvert Plaintiff's showing that it is entitled to summary judgment in this matter.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted.

---

**3.** Even if the laches defense had been proper-

ly raised, Nico's arguments are unpersuasive.

Plaintiff is ordered to submit on ECF a proposed judgment, including interest, liquidated damages, and any other statutorily prescribed costs or fees, within 10 days of the entry of this Decision, and Defendant shall file any objections thereto within 10 days thereafter.

**SO ORDERED.**

The first element of a laches defense requires Defendant to have "lacked knowledge that the claim might be asserted against [it]," *666 Drug, Inc. v. Tr. of 1199 SEIU Health Care Emps. Pension Fund*, 12–CV–1251, 2013 WL 4042614, at *9 (S.D.N.Y. Aug. 8, 2013) (Engelmayer, J.), a circumstance that appears unlikely here. Nico is a corporate enterprise that has long dealt with unions and contributed to multiemployer pension plans. It is implausible that a sophisticated entity like Nico did not know it was going to face withdrawal liability, much less that it was completely unaware of the protracted deadlock of the Fund's Board of Trustees that was causing its withdrawal liability to go uncollected. Indeed, Nico betrayed its awareness of the Fund's actions when it attempted to repudiate the .Fund's initial notice by referencing notices other employers had received and which had subsequently been withdrawn. A laches defense requires the Court to balance the equities, and Nico has failed to demonstrate that such an analysis would favor it in any way.