USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 95-1032 GIROUX BROS. TRANSPORTATION, INC., Plaintiff, Appellant, v. NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION FUND, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Aldrich and Coffin, Senior Circuit Judges. _____________________ ____________________ John D. O'Reilly, III with whom O'Reilly & Grosso was on brief _______________________ _________________ for appellant. Christopher N. Souris with whom Feinberg, Charnas & Birmingham ______________________ ________________________________ was on brief for appellee. ____________________ January 4, 1996 ____________________ ALDRICH, Senior Circuit Judge. Giroux Bros. ______________________ Transportation, Inc. (Giroux) appeals from the grant of summary judgment in favor of New England Teamsters & Trucking Industry Pension Fund (the Fund), the plan sponsor of a multi-employer employee benefit plan in which Giroux participated. Giroux sought a declaration of non-liability for the Fund's assessment of withdrawal liability under the Employee Retirement Income Security Act (ERISA), as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. 1381 et seq, claiming the Fund's demand ______ was barred by the statute of limitations, and that hardship should excuse it from the obligation to make interim payments of the Fund's demand pending resolution of this dispute. The Fund counterclaimed to the contrary. The court concluded that the Fund's demand was not barred, that Giroux failed to allege facts sufficient to show irreparable harm in order to avoid its obligation to make interim payments, and that resolution of its withdrawal liability dispute is committed in the first instance to arbitration. We affirm. The parties agreeing to the material facts, we take a moment to trace the genesis and procedural history of the controversy. Giroux had been making pension contributions to the Fund on behalf of its employees for a number of years pursuant to a standard, industry-wide collective bargaining agreement to which it periodically renewed its allegiance by -2- executing "supplements" with a Teamsters local. It decided to stop with the last executed agreement upon its expiration in 1981 or 1982, but neglected to notify the local, or the Fund. In light of a common industry tolerance for delay in executing renewals,1 failure to execute a new agreement would not necessarily give rise to an inference that an employer no longer intended to be bound, and Giroux continued, without interruption, to make employee contributions to the Fund's pension plan until early 1994. When these payments ceased, the Fund responded by sending Giroux a standard delinquency notice, to which Giroux responded that it had "not had a collective bargaining agreement with the Teamsters for some 15-20 years," and thus had no obligation to continue contributions. The Fund then verified that Giroux had never executed any successors to the agreement that expired in 1981 or 1982, and conceded Giroux thus had no contractual obligation to contribute after that point. The parties agree that Giroux therefore "withdrew" from the Fund within the meaning of the MPPAA, 1383(a)(1), upon expiration of its last collective bargaining agreement, sometime in 1981 or 1982. The Fund therefore assessed and demanded payment of withdrawal liability from Giroux as of September 30, 1981, as  ____________________ 1. The district court noted that gaps of several years between expiration and renewal are not uncommon among the thousands of employers that adhere to the collective bargaining agreement through executing supplements with Teamsters locals. -3- provided. 29 U.S.C 1381 et seq. _______ In October, 1994, Giroux initiated arbitration according to the MPPAA's mandatory arbitration provision, id. ___ at 1401, claiming the Fund's demand for withdrawal liability payment some 12 years after its effective withdrawal was untimely, and, even if timely, it was entitled to credit for post-withdrawal contributions. Giroux simultaneously instigated this action in the District of Massachusetts for declaratory judgment that the Fund's demand was statutorily barred by the six year limitation contained in 1451(f), and for injunctive relief from its obligation under 1399(c)(2) to make interim payments of the Fund's withdrawal liability assessment pending resolution of its claims. The Fund counterclaimed to the contrary. It stressed that the timeliness of its demand was governed exclusively by 1399(b), which in turn is statutorily committed to resolution through arbitration, 29 U.S.C.  1401(a)(1), and sought declaratory relief. In December, 1994, the district court ruled that the Fund's demand was not barred by 1451(f), that Giroux's allegations of financial hardship did not amount to "irreparable harm" sufficient to exempt it from statutory obligation to make interim payments, and that any remaining dispute with respect to the Fund's demand had to be resolved through arbitration. Giroux's appeal was argued in -4- September, 1995. In October, 1995, the arbitrator ruled, inter alia, __________ that Giroux was estopped from contending that the Fund's demand was untimely by its own "equivocal" and "deceitful" actions, and that the Fund's demand was made "as soon as practicable" under 1399(b)(1) in any event; it declined to rule on Giroux's offset claim. Both parties briefed this court on the implications of the arbitration award for this appeal. I. Withdrawal Liability ________________________ The MPPAA was enacted in response to a crisis facing multi-employer pension plans from which employers had withdrawn in increasing numbers, leaving the plans without adequate funds to pay vested employee benefits. See Pension ___ _______ Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 722- ______________________ _______________ 25 (1984). The act makes an employer withdrawing from such a plan liable for its proportionate share of the plan's unfunded vested benefits. Id. at 725; 29 U.S.C. 1381, ___ 1391. Withdrawal generally occurs when an employer permanently ceases to have an obligation to contribute under the plan, or ceases all covered operations. Id. at ___ 1383(a). The plan sponsor must assess, schedule and demand withdrawal liability payment "[a]s soon as practicable after an employer's complete or partial withdrawal," id. at ___ 1399(b)(1), and an employer must pay according to the -5- Fund's schedule notwithstanding any pending dispute. Id. at ___ 1399(c)(2). -6- II. Statute of Limitations ___________________________ Giroux seeks to avoid the Fund's demand for withdrawal liability payment by invoking the limitations provision of the MPPAA, which states, in relevant part, that a plan fiduciary who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan, . . . may bring an action for appropriate legal or equitable relief, or both, 29 U.S.C. 1451(a)(1), but no later than (1) 6 years after the date on which the cause of action arose, or (2) 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action; except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action. Id. at 1451(f). Giroux claims that because the Fund did ___ not demand withdrawal liability payment until some 12 years after Giroux's withdrawal from the Fund's pension plan, its demand is barred by this provision. The Fund contends on appeal that its demand in this case is not governed by 1451(f) because this provision is a limitation only on litigation, and since it did not instigate __ this lawsuit but merely demanded payment according to its statutory rights, it has not commenced an "action" within the meaning of 1451. Thus, according to the Fund, the statute -7- of limitations cannot have begun to run with respect to any action it could bring to enforce these rights. __ _______ We cannot agree that an action for declaration of non-liability asserting a statute of limitations defense renders the statute inapplicable simply by virtue of the fact that the party claiming liability did not commence the action, especially where (but not because) that party counterclaimed for declaration and enforcement of its rights. However, the principal question raised by Giroux's action, whether the Fund timely made its demand, is explicitly governed by 1399, which provides: As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall-- (A) notify the employer of-- (i) the amount of the liability, and (ii) the schedule for liability payments, and (B) demand payment in accordance with the schedule. 29 U.S.C. 1399(b)(1). The MPPAA further provides that if the Fund's demand for withdrawal liability payment was made "as soon as practicable," then it is due and owing, notwithstanding a pending dispute, id. at 1399(c)(1)(A)(i) ___ and (2), and the Fund can bring an action to compel "immediate payment" of any outstanding amounts, id. at ___ 1399(c)(5) and 1451(a), subject to the statutory time -8- limitation. Id. at 1451(f). We find this statutory ___ framework governing a plan sponsor's demand for withdrawal liability payment sufficiently clear so that to the extent the general 6 year limitation on actions conflicts, Congress did not intend it to override. We therefore hold that questions concerning the timeliness of a plan sponsor's demand are governed exclusively by 1399(b)(1). Thus resolution of Giroux's claim turns solely on whether the Fund's demand was made "as soon as practicable" after Giroux's withdrawal.2 However, any dispute regarding the timeliness of the Fund's demand under 1399(b)(1) is statutorily committed to arbitration in the first instance. 29 U.S.C. 1401(a)(1).3 This is no less so because it may also involve a measure of statutory interpretation. Vaughn v. ______ Sexton, 975 F.2d 498, 502 (8th Cir. 1992), cert. denied, ___ ______ ____________ U.S. ___, 113 S. Ct. 1268, 122 L.Ed.2d 664 (1993) (citing cases of 2d, 3d, 4th, 6th and D.C. circuits); Teamsters _________  ____________________ 2. We express no views on the significance of section 1451(f) to a determination of whether the Fund's demand was made "as soon as practicable" within the meaning of  1399(b)(1), as this question is not before us. See post. ___ ____ 3. Any dispute between an employer and the ___ sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration. _____ 29 U.S.C. 1401(a)(1) (emphasis added).  -9- Pension Trust Fund v. Allyn Transp. Corp., 832 F.2d 502, 504 ___________________ ___________________ (9th Cir. 1987); Trustees of Colorado Pipe Ind. Pension Trust ____________________________________________ v. Howard Electrical & Mech., Inc., 909 F.2d 1379, 1386 (10th _______________________________ Cir. 1990), cert. denied, 498 U.S. 1085 (1991). ____________ Although the arbitration provision is an exhaustion of administrative remedies requirement, rather than a jurisdictional bar, see, e.g., Colorado Pipe, 909 F.2d at ___ ____ ______________ 1385 (citing cases), there can be no question that it was aptly applied here, when arbitration was already underway. III. Relationship of this Appeal  __________________________________ to Parallel Arbitration Proceedings ___________________________________ It now seems to be Giroux's position that the arbitrator's determination that the Fund's demand was timely under 1399(b)(1) is before this court for review, or, that this issue, never raised before the district court, is open for our consideration. Although it might conserve resources in this instance to concur, we disagree. Rather, Giroux's only recourse is to pursue judicial review of the arbitration award: Upon completion of the arbitration proceedings in favor of one of the parties,any party thereto may bring an action, no later than 30 days after the issuance of an arbitrator's award, in an appropriate United States district court in accordance with section 1451 of this title to enforce, vacate, or modify the arbitrator's award. 29 U.S.C. 1401(b)(2). This simultaneously pending action, -10- brought separately to assert a claim under a non-arbitrable provision of the MPPAA, does not qualify as a proper appeal of the arbitrator's ruling. We see no reason to undertake review of the arbitrator's analysis when it is beyond serious dispute that issues arising under 1399 cannot normally be litigated in federal court independent of arbitration, and the process for appealing an arbitration award is clear. We are well aware that enforcing the statutorily mandated procedure in this case could land it again before us in substantially the same posture after additional expense on both sides, and that the legislative aim in enacting the MPPAA included lessening the costs and delay of withdrawal liability dispute resolution. See, e.g., I.A.M. Nat. Pension ___ ____ ___________________ Fund v. Clinton Engines Corp., 825 F.2d 415 at 426 and n. 20 ____ _____________________ (D.C. Cir. 1987) (citing legislative history). Yet, to hold otherwise would create a loophole for employers to bypass the statutory scheme by disguising arbitrable disputes for presentation directly in federal court, as Giroux did here, then invoking legislative purpose in order to get prompt appellate consideration. Because this is not a proper appeal of the arbitrator's award, and we decline to independently reach Giroux's arbitrable claims, we do not review whether the Fund's demand was made "as soon as practicable," or any other arbitrable issues. IV. Interim Payment of the Fund's Demand _________________________________________ -11- The district court held that Giroux's claims of hardship were insufficient to avoid meeting its statutory obligation to make interim payments of the Fund's demand pending ultimate resolution of its withdrawal liability dispute. 29 U.S.C. 1399(c)(2).4 See Debreceni v. ___ _________ Merchants Terminal Corp., 889 F.2d 1, 4 (1st Cir. 1989); _________________________ Trustees of the Plumbers and Pipefitters National Pension _____________________________________________________________ Fund v. Mar-Len, Inc., 30 F.3d 621, 624 (5th Cir. 1994). ____ ______________ Giroux contended that the Fund's claim would most certainly be found barred by 1451(f), and that meeting these payments would require a partial liquidation of its assets and employee layoffs, hence the court therefore abused its discretion in failing to suspend payment. We have already disposed of Giroux's first contention; we turn to the second. The MPPAA indisputably creates a "pay now, dispute later" mechanism, deeming the protection of multi-employer pension plans and their beneficiaries paramount. See id. at ___ ___ 624 (citing cases); Debreceni, 889 F.2d at 5. This scheme _________  ____________________ 4. This section states, in relevant part: Withdrawal liability shall be payable in _____ accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than ______________ 60 days after the date of the demand notwithstanding any request for review or _______________ appeal of determinations of the amount of such liability or of the schedule. 29 U.S.C. 1399(c)(2) (emphasis added). -12- puts payment ahead of decision even though the employer might prevail in the end.5 Trustees of Chicago Truck Drivers ____________________________________ Pension Fund v. Central Transp., Inc., 935 F.2d 114, 118 (7th ____________ _____________________ Cir. 1991). Although we have therefore held that "assessed interim liability payment must be paid . . . notwithstanding a pending arbitrable dispute," Debreceni, 889 F.2d at 4, we _________ have never squarely decided whether an equitable exception exists.6 Id. at 7. However, in light of the clear ___ congressional intent to protect multi-employer pension plans in withdrawal liability disputes, we have indicated that should an equitable exception exist it would "require no less than the threat of imminent insolvency." Id. at 7 and n. 6. ___________________ ___ Giroux's allegations, even if accepted, do not suggest such harm. Affirmed. ________  ____________________ 5. The MPPAA requires "actual payment shall commence in accordance with [the schedule set forth by the plan sponsor]," 29 U.S.C. 1399(c)(1)(A)(i) and (2), note 4, supra; Debreceni, 889 F.2d at 6; the plan has a right to _____ _________ "immediate payment" of any outstanding amount, plus interest, "from the due date of the first payment which was not timely made," 29 U.S.C. 1399(c)(5); a plan may enforce this right, id. at 1451(a)(1); employers are entitled to recovery of ___ any overpayment, with interest, 29 C.F.R. 2644.2(d). 6. Other circuits have held an employer may avoid interim payment only if the pension plan's claim is frivolous or not colorable. Mar-Len, 30 F.3d at 626; Trustees of Chicago _______ ____________________ Truck Drivers v. Central Transport, Inc., 935 F.2d 114, 119 _____________ _______________________ (7th Cir. 1991). -13-