**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2874
_____

RTI RESTORATION TECHNOLOGIES, INC.;
INDUSTRIAL MAINTENANCE INDUSTRIES, LLC

v.

INTERNATIONAL PAINTERS AND ALLIED TRADES
INDUSTRY PENSION FUND,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:22-cv-02364)
District Judge:  Hon. Jamel K. Semper

_____

Argued:  November 3, 2025

_____

BEFORE:  PHIPPS, ROTH, and RENDELL, *Circuit Judges*.

(Filed: March 3, 2026)

Neil J. Gregorio, Esq.
Brian A. Pepicelli, Esq.    **[ARGUED]**
Tucker Arensberg
One PPG Place
Suite 1500
Pittsburgh, PA 15222

      Counsel for Appellant

Eric Magnelli, Esq.    **[ARGUED]**
Brach Eichler
101 Eisenhower Parkway
Roseland, NJ 07068

      Counsel for Appellee

_____

OPINION OF THE COURT
_____

RENDELL, *Circuit Judge*.

The International Painters and Allied Trades Industry Pension Fund ("Fund"), a multi-employer pension plan fund, sought to collect "withdrawal liability," 29 U.S.C. § 1381(b)(1), from Industrial Maintenance Industries LLC and RTI Restoration Technologies, Inc. ("Companies") as successors to a defunct contributing employer under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001, *et seq*. The Companies responded by seeking a declaratory judgment in federal court that they were neither directly liable to the Fund nor liable

under any successor theory. The Companies also urged that even if liable, the Fund's failure to demand payment promptly resulted in prejudice such that the Fund's claim was barred by the doctrine of laches.

Although the District Court concluded that genuine issues of material fact precluded summary judgment as to liability, it nevertheless granted judgment to the Companies because the Fund's failure to act "[a]s soon as practicable" in notifying the companies of the withdrawal liability doomed its claim under the MPPAA, 29 U.S.C. § 1399(b)(1). This result, the District Court reasoned, was consistent with this Court's opinion in *Allied Painting and Decorating, Inc. v. Int'l Painters and Allied Trades Indus. Pension Fund*, 107 F.4th 190 (3d Cir. 2024).

The Fund asks us to vacate the District Court's order and urges that the issue of whether the Fund could state a cause of action given the Fund's failure to comply with the MPPAA's "as soon as practicable" requirement was waived. It contends that, under the scheme of the MPPAA, the issue should have been, and can only be, determined by an arbitrator. As the issue was never submitted to arbitration, the Fund reasons, and the time for seeking arbitration has passed, the Companies have waived the issue. The District Court, the Fund's argument continues, thus had no authority to resolve the case on that ground. We disagree and, therefore, we will affirm.

I.

Under the terms of a 1998 collective bargaining agreement between Coating Technologies, Inc. ("CTI") and the International Union of Painters and Allied Trades District

3

Council 711 ("Union"), CTI was required to contribute to the Fund on behalf of its covered employees. It made its contributions until it closed in 2013. That year, the IUPAT Health and Welfare Funds ("IUPAT Funds"), sued CTI and its owners, including a company officer named Robert Gagliano, to collect delinquent contributions. In 2015, the case settled with the entry of a consent judgment.

Gagliano was at various times a business partner, an employee, and part-owner of the Companies, which were founded in 2011 and 2013. So, in connection with efforts to enforce the consent judgment against CTI, the Union and the IUPAT Funds had repeated contact with RTI and IMI "because of Robert Gagliano's involvement." JA23. In 2015, the consent judgment was satisfied. And in 2018, Gagliano died.

Three years after Gagliano's death, eight years after CTI went out of business, and six years after the IUPAT Funds successfully collected delinquent contributions from CTI, the Fund decided that CTI owed withdrawal liability under the MPPAA. In July 2021, the Fund, for the first time, notified the Companies of the purported liability. By letter, the Fund asserted that it had "determined that [CTI] and [the Companies were] under common control . . . [and] had a complete withdrawal from the . . . Fund . . . *during the 2013 Plan year*." JA133 (emphasis added). And "[b]ased on *December 31, 2012 data* . . . [the Companies'] single sum share of unfunded vested benefit liability . . . is $800,445." JA133 (emphasis added).

The Companies denied liability explaining that "RTI/IMI has never been a signatory to a Collective Bargaining Agreement with the . . . Union . . . and never agreed to make contributions to the Fund." JA110. Moreover, "neither RTI

4

nor IMI are under common control with CTI . . . . [and] for RTI/IMI to be liable for CTI's . . . withdrawal . . . a control group relationship must exist." JA110. Negotiations between the parties failed to resolve the dispute. Rather than seeking arbitration, the Companies filed suit in federal court.

The Companies sought a "declaratory judgment that [they]: (i) are not 'employers,' . . . ; (ii) are not a 'contributing business' or a business under 'common control' with third-party [CTI]; (iii) are not a successor to, alter ego of, joint or single employer with, and/or part of controlled group of entities with CTI; and therefore; (iv) are not liable under ERISA for the alleged withdrawal liability of CTI." JA37. The Fund answered the Complaint and filed a Counterclaim seeking to collect the withdrawal liability.

In its Counterclaim, the Fund alleged that the Companies not only owed CTI's withdrawal liability as its successors, but also owed "collateral damages" and interest associated with purportedly delinquent payments on the principal amount. JA57-58. It further alleged that these damages and interest resulted by operation of law because the Companies "did not demand arbitration against the Fund under 29 U.S.C. § 1401(a)(1) . . . [before] the deadline for them to do so expired on January 23, 2022." JA58.

Later, the parties submitted cross-motions for summary judgment. The Companies argued that summary judgment was appropriate for two reasons. First, the Fund failed to adduce evidence that the Companies were alter egos of, or successors to, CTI or otherwise employers as defined under ERISA. Second, even if the Fund could establish liability, its dilatoriness in notifying the Companies of the withdrawal

5

liability resulted in prejudice and, thus, the Fund's claim was barred by laches.

The Fund, by contrast, urged that evidence showed the Companies were liable under both an alter ego theory and a successor theory.[1] Laches, the Fund argued, did not apply because in choosing to challenge the threshold question of whether the Companies are "employers" under the MPPAA rather than demanding arbitration, the Companies waived any argument as to the timeliness of the Fund's notice and demand for withdrawal liability. Even if laches applied, the Fund urged, its dilatoriness was excusable because of the complex procedure it chose to employ to determine withdrawal liability. *See* D.C. CM/ECF No. 50 at 16-17 (describing the Fund's struggle to track "the large volume of employers," and admission that it took at least two years from when "CTI appeared on [its] . . . inactive list" before "counsel . . . ultimately . . . recommended that the Fund issue an assessment" due to a "backlog" in its system).

Before the District Court ruled on the cross-motions, however, we decided *Allied*, 107 F.4th 190, which involved the same fund at issue in this case and a similar procedural issue.[2] In that case, we held that a pension fund cannot collect on a claim for withdrawal liability unless three requirements have been met: (1) an employer has withdrawn from a plan; (2) the fund has notified the employer of its assessment of withdrawal

---

[1] The Fund withdrew its claim of liability against the Companies under a "common control" theory. JA15 n.2.

[2] Indeed, the Fund was represented by the same firm and some of the same attorneys in *Allied*. *Compare Allied*, 107 F.4th at 192 (listing the Fund's counsel) *with* Fund's Brief 29.

liability "as soon as practicable;" and (3) the employer has defaulted on a payment "due and payable." *Id.* at 197. As for the second of these prerequisites—the "as soon as practicable" element—we noted that while generally a "flexible" requirement, *id.*, "diligence is what the [MPPAA] requires," *id.* at 193. Thus, we concluded that where a pension fund failed to demand withdrawal liability from a purported contributing employer within twelve years of an employer's withdrawal, the fund could not recover because it had not acted "as soon as practicable." *Id.*

Two months after our decision in *Allied*, the District Court granted judgment in favor of the Companies. At the outset of its opinion, the District Court found genuine issues of material fact precluded judgment on the question of whether the Companies were employers.[3] However, it nevertheless granted summary judgment to the Companies, "not . . . based upon the doctrine of laches," as the Companies had urged in their brief, but "instead based upon [an independent ground, i.e.,] the Fund's failure to provide notice of its withdrawal liability assessment and demand payment from Plaintiffs 'as soon as practicable' following the employer's withdrawal per 29 U.S.C. § 1399(b)(1)." JA22. In reaching this result, the District Court relied on our opinion in *Allied*, 107 F.4th 190,

---

[3] *See* JA18 ("record evidence creates a dispute of material fact as to whether RTI/IMI and CTC may be treated as a 'single integrated enterprise'"); JA20 ("the Court determines that the evidentiary records before it raise issues of fact as to the identity of ownership between RTI/IMI and CTC," under an alter ego theory); JA21 ("the Court determines that there are genuine issues of material fact that preclude granting a motion for summary judgment for either Plaintiffs or the Fund").

and cited our observation that "the 'as soon as practicable requirement . . . is an independent statutory requirement'" such that the failure to meet that requirement forecloses a pension fund's right to recover. JA23.

The District Court identified two important undisputed facts, which supported its conclusion. It wrote:

> Within the five-year period after CT[I] went out of business and stopped remitting contributions to the Fund (2013-2018), the following occurred:
>
> (1)     in 2013, the IUPAT Welfare Fund initiated a lawsuit against CT[I] for unpaid welfare fund contributions . . . ; and
>
> (2)     from 2015 through 2017, the . . . Union . . . w[as] in repeated contact with RTI and IMI purportedly because of Robert Gagliano's involvement with the companies and CT[I]'s still unpaid delinquent contributions.

JA23. So, the District Court reasoned "[b]ased upon the record evidence, as of 2013, the Fund had all the requisite information available to be aware that CT[I] withdrew from the Fund and RTI/IMI were operational (with Gagliano's involvement as of 2015)." JA24. Despite this information, and in stark contrast with the IUPAT Funds' timely actions, the Fund failed to demand liability from the Companies until 2021. This "8-year delay in determining a withdrawal was not in compliance with the statutory framework," the District Court concluded. JA24. Indeed, "this 8-year delay . . . ran directly contrary to the

Fund's statutory obligation pursuant to 29 U.S.C. § 1399(b)(1) and the *Allied* decision." JA24.

As the failure to act as soon as practicable is an independent legal predicate to recovery, the Court further reasoned, it mattered not whether the Companies raised the issue in arbitration or raised it in court as part of a declaratory judgment action, or whether the court, as it did in this case, raised the issue sua sponte. JA22-23, 23 n.5. That is, while the defense of laches is an affirmative defense subject to waiver, whether the Fund acted as soon as practicable in demanding withdrawal liability is not. Drawing on *Allied*, the Court held that it is a separate independent requirement that the Fund must prove, and thus the District Court rejected the Fund's "waiver" argument.

The District Court also rejected the Fund's alternative argument that even if the Companies had not waived its challenge to the timeliness of the demand, the eight-year delay in notifying the Companies of their withdrawal liability was excusable in the context of a laches defense. In its view, the Fund failed to show excusable delay for two main reasons.

First, the Fund had all the necessary information to identify CTI's withdrawal by no later than 2013. Although the Fund urged it could not have known about the withdrawal liability before 2021, the District Court noted the inconsistency in the Fund's position. *See, e.g.*, D.C. CM/ECF No. 50 at 16 (admitting that "CTI appeared on [the Fund's] five-year inactive list [by] 2019" but failing to act until two years later). In staking out this position, the Court observed, the Fund was attempting simultaneously to "downplay its knowledge regarding CT[I]'s withdrawal," while relying on that

9

knowledge to "impute . . . [liability for] withdrawal on [the Companies]." JA24.

Second, the District Court reasoned that "the *Allied* decision . . . dealt with the same lengthy procedure" that the Fund employed in this case to determine withdrawal liability, which was found not to justify the Fund's delay in demanding liability from the contributing employer. JA24. As the process at issue in *Allied* did not support a finding of excusable delay, the same process could not support a finding of excusable delay in this case. JA24.

The Fund appealed.

## II.[4]

The issue on appeal involves the statutory scheme of the MPPAA, primarily its requirement that disputes regarding the determination of the withdrawal liability are subject to arbitration following notice to, and demand by, the contributing employer.

## A.

As the Supreme Court has explained, "Congress enacted the MPPAA to protect the financial solvency of multiemployer pension plans." *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 196 (1997) (citing *Milwaukee Brewery Workers' Pension Plan*

---

[4] The District Court had jurisdiction under 29 U.S.C. § 1451(c) and 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291.

*v. Jos. Schlitz Brewing Co.*, 513 U.S. 414, 416-17 (1995)). To that end, "[t]he statute requires most employers who withdraw from underfunded multiemployer pension plans to pay 'withdrawal liability.'" *Id.* (citing 29 U.S.C. § 1381(a)). "[A]n employer incurs withdrawal liability when it effects a 'complete withdrawal' from the plan." *Id.* Upon an employer's withdrawal from a pension plan, the burden of calculating the amount of withdrawal liability falls on the plan's trustees. *Id.* at 197. Although the trustees are afforded great latitude in doing so, the MPPAA requires "diligence." *Allied*, 107 F.4th at 193. Thus, "as soon as practicable" after an employer's withdrawal, the plan's trustees must "set an installment schedule and demand payment" from the former contributing employer. *Bay Area*, 522 U.S. at 197 (citing 29 U.S.C. § 1399(b)(1)).

Upon "receipt of the trustees' schedule and payment demand, the employer may invoke a dispute resolution procedure that involves reconsideration by the trustees and, ultimately, arbitration." *Id.* "Any dispute between an employer and the plan sponsor . . . concerning *a determination made* under sections 1381 through 1399 . . . shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1) (emphasis added). The time to request arbitration under the statute varies,[5] but may be "jointly initiate[d] . . . within the 180-day period after the date of the plan sponsor's [notice and] demand under section 1399(b)(1)." 29 U.S.C. § 1401(a)(1). "If no party requests arbitration, the installments become 'due and

---

[5] *See, e.g.*, 29 U.S.C. § 1401(a)(1) (providing different times to demand arbitration based on whether the employer first seeks review by the demanding fund and whether the fund provides a response).

11

owing.'" *Bay Area*, 522 U.S. at 197. "Should the employer fail to pay . . . the plan may . . . . sue to collect the unpaid debt," *id.*, "in a State or Federal court," 29 U.S.C. § 1401(b)(1).

We have observed that the MPPAA expresses a "clear preference for self-regulation through arbitration" while providing "for judicial review in the event that arbitration failed to resolve the controversy." *Republic Indus., Inc. v. Cent. Pa. Teamsters Pension Fund*, 693 F.2d 290, 294-95 (3d Cir. 1982). But we have "held that under [the] MPPAA[,] there is no *per se* exhaustion requirement under which the court lacks jurisdiction to hear cases that have not first been before an arbitrator." *Dorn's Transp., Inc. v. Teamsters Pension Fund*, 787 F.2d 897, 903 (3d Cir. 1986) (citing *Republic Indus.*, 693 F.2d at 295-96). Thus, as discussed in greater detail below, we have recognized that arbitration may be "bypassed" in the "rare case in which there [i]s no need for the development of a factual record." *Dorn's*, 787 F.2d at 903. And, presumably, the factual record that an arbitrator would consider would center on the "determination" made regarding withdrawal liability.

B.

The Fund frames the issue on appeal as "[w]hether the District Court erred in granting summary judgment to the . . . Companies based on a defense that is subject to arbitration . . . and that the . . . Companies waived by failing to first pursue [it] in that forum." Fund's Br. 4. To support its position that the District Court erred, the Fund relies on a series of cases in other circuits where a failure by an employer to demand arbitration upon notification of a pension plan's demand for withdrawal liability was deemed a waiver of any challenge as to the

12

timeliness of the notice.  But there are at least three problems with the Fund's argument.

First, the Fund presumes that any issue regarding the timeliness of a fund's notice and demand is a "defense" subject to "waiver."  The Fund seems to conflate the timeliness requirement with an equitable defense of laches.  But it is more than that after *Allied*.  It is an independent statutory requirement.

Second, the out-of-circuit cases on which the Fund relies are distinguishable.

And third, the Fund does not urge, nor could it, that the District Court lacked the authority to address the issue of the timeliness of its notice and demand under our existing precedent.[6]  Instead, the Fund only vaguely claims that the District Court "erred" in addressing the "as soon as practicable" requirement, which it contends can only be raised in arbitration.  Fund's Br. 4.  But our precedent supports the District Court as the appropriate tribunal to consider the Companies' complaint as well as its ruling.

i.

---

[6] The Fund concedes the District Court properly had jurisdiction by seeking to reverse the District Court's order on the "as soon as practicable" ground but otherwise not seeking to disturb the District Court's conclusion that genuine issues of material fact prohibit judgment on whether the Companies are employers.

We first reject the gloss that the Fund has placed on the issue presented in this case to the extent that it is premised on the idea that the "as soon as practicable" requirement is an affirmative "defense" subject to "waiver." We have never so held, and, indeed, our precedent undermines the Fund's position.

In *Allied*, we affirmed the district court's order vacating an award in favor of the Fund based on the "as soon as practicable" requirement despite the issue never having been raised in the proceedings below. 107 F.4th at 195. We will discuss *Allied* more fully below, but we note that we rejected the notion that the employer needed to show prejudice to succeed based on delay. We sua sponte addressed whether the Fund acted "as soon as practicable" under § 1399(b)(1) because it "is an independent statutory requirement." *Id.* at 199. Ultimately, we instructed that compliance with the requirement is a sine qua non of a successful claim for withdrawal liability because it is "one of the elements of the MPPAA." *Id.* at 198. That the provision of notice and demand "as soon as practicable" is an essential element of the claim for liability, we reasoned, flowed naturally from the Supreme Court's teaching in *Bay Area* regarding the statute of limitations. *Id.* at 196.

There, the Supreme Court explained that the statute of limitations for a claim of withdrawal liability begins to run "not when the employer withdraws from the fund . . . but when the employer defaults on an installment 'due and payable' *following the fund's notice and demand*." *Id.* (emphasis added). This is because limitations periods begin when "the plaintiff has a '*complete* and present *cause of action*.'" *Bay Area*, 522 U.S. at 195 (quoting *Rawlings v. Ray*, 312 U.S. 96,

14

98 (1941)) (emphases added). And only when the fund has provided notice and demand "as soon as practicable," does claim for withdrawal liability accrue.

The Fund seizes upon dicta in *Bay Area* to support a sweeping proposition that the question of whether an employer has complied with the "as soon as practicable" requirement can be raised only in the form of an affirmative laches defense in arbitration. The language—namely, where "an employer believes the trustees have failed to comply with their 'as soon as practicable' responsibility, the employer may assert that violation as a laches objection at an arbitration"—is persuasive, not mandatory. *Bay Area*, 522 U.S. at 205. This statement is meant to emphasize the notion that fund trustees should be diligent in making a demand on the employer. Moreover, we have already written about this passage from *Bay Area* and have explicitly recognized that it is "dicta." *Allied*, 107 F.4th at 197.

We have previously explained that "*Bay Area* resolved only the issue of how to read the time limitation *on filing a suit under the MPPAA*." *Id.* (emphasis added). And "[t]he reference to laches comes *in that context*." *Id.* (emphasis added). The Supreme Court discussed a laches defense as "*a* potential defense to a suit brought within the six-year statute of limitations from when the employer defaults on a payment." *Id.* (emphasis added). The Supreme Court did not say, contrary to the Fund's urging, that the issue of whether a fund has complied with the "as soon as practicable" requirement can *only* be raised in connection with a laches defense at arbitration.

15

Indeed, we have criticized the view, taken by some out-of-circuit district courts, that "laches is the *required* vehicle to challenge timeliness of the withdrawal-liability notice and demand." *Allied*, 107 F.4th at 197 n.15 (emphasis in the original) (rejecting the idea that laches is the only means of addressing timeliness, which is the view taken by the U.S District Courts for the Middle District of Tennessee and the Eastern District of New York in *PACE Indus. Union-Mgmt. Pension Fund v. Troy Rubber Engraving Co.*, 805 F. Supp. 2d 451, 464 (M.D. Tenn. 2011), and *Pavers & Rd. Builders Dist. Council Pension Fund by Montelle v. Nico Asphalt Paving, Inc.*, 248 F. Supp. 3d 374, 380 (E.D.N.Y. 2017)). At bottom, laches is *one* vehicle for challenging timeliness, but it is not the *exclusive* means by which alleged delay may be addressed, nor is it the lens through which the "as soon as practicable" requirement should be viewed.

ii.

The Fund cites the Eighth Circuit's opinion in *Vaughn v. Sexton*, 975 F.2d 498 (8th Cir. 1992), which predated the Supreme Court's decision in *Bay Area*, to support its view that compliance with the "as soon as practicable" requirement of the MPPAA is a waivable defense. But *Vaughn* does not advance the Fund's cause insofar as the Eighth Circuit was considering laches as a defense, nor did it mention, let alone consider, the "as soon as practicable" requirement as such.

There, an employer withdrew from a pension fund in 1984. *Vaughn*, 975 F.2d at 500. Four years later, the fund notified the employer of its outstanding withdrawal liability. *Id.* The following year, the fund sued the employer in federal court seeking to collect on the withdrawal liability. *Id.* The district court concluded that "because the [employer] had never

16

requested arbitration, they had waived their right to assert *laches as a defense* to payment." *Id.* at 501 (emphasis added).

On appeal, the employer argued that "the question of unreasonable delay is one requiring statutory interpretation and is therefore not suitable for resolution by an arbitrator rather than a court." *Id.* The fund, however, countered that "the essence of the *laches claim*—that the trustees did not notify the defendants 'as soon as practicable,' . . . after the withdrawal . . . is a factual dispute and therefore within the purview of matters *amenable* to resolution by an arbitrator." *Id.* (emphasis added).

The Eighth Circuit agreed with the fund. It wrote: "We believe that the question of whether the pension plan trustees' delay was unreasonable is a factual one that could have been raised by the defendants at the time they could have requested arbitration. We hold, accordingly, that by their failure to request arbitration they have waived it as a *defense to payment*." *Id.* (emphasis added). Thus, the issue before the Eighth Circuit was whether the equitable defense of laches is waivable, not whether the fund complied with the "as soon as practicable" requirement. To the extent that *Vaughn* can be read to support the Fund's position that the "as soon as practicable" requirement can be waived, it conflicts with the Supreme Court's teaching in *Bay Area* that the Fund's claim does not even accrue until timely notice and demand has been made.

Beyond *Vaughn*, the Fund cites a string of out-of-circuit cases to support its argument that compliance with the "as soon as practicable" requirement may only be raised in the form of a defense at arbitration, but these cases are also distinguishable.

17

The Fund, for example, urges that the Court of Appeals for the District of Columbia Circuit in *Joyce v. Clyde Sandoz Masonry*, 871 F.2d 1119, 1126-27 (D.C. Cir. 1989), and the First Circuit in *Giroux Bros. Transp. v. New England Teamsters & Trucking Indus. Pension Fund*, 73 F.3d 1, 3-4 (1st Cir. 1996), have "provid[ed] that this [as soon as practicable] defense is clearly subject to arbitration in the first instance." Fund's Br. 27. The Fund mischaracterizes both opinions.

*Joyce* involved "a single issue of statutory interpretation: What acts or omissions trigger . . . [the] time bar . . . applied to efforts to collect withdrawal liability?" 871 F.2d at 1122. It did not involve the question of whether the "as soon as practicable" requirement is a defense nor whether a pension plan's compliance with the requirement can be determined only through arbitration. And while the court ultimately remanded the case to be considered by an arbitrator, it did not rule that arbitration was required in all instances. Instead, it echoed our own observation in *Republic Indus.*, 693 F.2d at 294-95, that the MPPAA "favors arbitration" and that disputes "should be conducted initially before an arbitrator" when "*practicable*," *Joyce*, 871 F.2d at 1127 (emphasis added).

*Giroux*, like *Vaughn*, predates the Supreme Court's opinion in *Bay Area*, and is factually distinguishable in so many ways that it deserves little discussion. An arbitrator had already entered an award against the employer. *Giroux*, 73 F.3d. at 2. Given the posture of the case, the court deferred judgment on the employer's alternative argument regarding the timeliness of the fund's notice and demand until such time as there was a direct appeal from the arbitrator's award. *Id.* at 4. In so deciding, the First Circuit noted that the MPPAA's "arbitration provision is an exhaustion of administrative

18

remedies requirement, rather than a jurisdictional bar." *Id.* at 4.

As for the remaining out-of-circuit district court cases cited by the Fund in a footnote, *see* Fund's Br. 27 n.4, each is distinguishable in that the courts in those cases viewed the "as soon as practicable" requirement as essentially merged with or "subsumed by [the] laches defense," *Pavers*, 248 F. Supp. 3d at 380. But as discussed in connection with *Bay Area* above, we have already parted ways with this view. *Allied*, F.4th at 197 n.15.

But reliance on *Vaughn*, and the cases cited by the Fund, is even more problematic because in those cases, unlike here, it was essentially undisputed that the business organizations from which the pension fund demanded withdrawal liability were "employers" who, presented with notice and demand for payment under the MPPAA, were required to seek arbitration to challenge the "determination." *Vaughn*, 975 F.2d at 500 ("the pension plan trustees demanded payment . . . from [the stockholders of the contributing employer]"). But it cannot and does not control the situation where the demand is made of entities that contend they are not liable as an employer. This distinction is key.

We have clearly held that cases in which a party's status is unclear may first be submitted to a court to determine the employer's status. *See, e.g.*, *Flying Tiger Line v. Teamsters Pension Tr. Fund of Phila.*, 830 F.2d 1241, 1251 (3d Cir. 1987) (citing *Banner Indus., Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 657 F. Supp. 875, 882 (N.D. Ill. 1987)); *see also IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 127 (3d Cir. 1986) (noting that "[i]f [a] corporation

19

legitimately believes its status as a controlled group member is doubtful, it could bring a declaratory judgment action to have that question resolved by a federal court[, which could] enjoin the running of the statutory period for seeking review and arbitration").[7]

So, if all the Companies had to support their position was the fact that other cases were distinguishable because they focused on laches and involved employers who are required to opt for arbitration, our path to affirmance would be more inferential than clear cut. But our recent opinion in *Allied* takes the notice and demand "as soon as practicable" requirement to a new level that dictates that the District Court here got it right. A closer examination of *Allied* is in order.

Allied, a painting company owned by Robert Smith, "signed an agreement" with a union requiring Allied to contribute pension benefits payments to the same Fund at issue in this case. *Allied*, 107 F.4th at 193. Several years later, Allied went out of business, but submitted reports to the union showing that it had not used union labor and, thus, had no obligation to contribute to the Fund. *Id.* Smith, however, went on to establish a new company called Allied Construction Management. *Id.*

---

[7] The Dissent assumes without any reasoning that the dispute between the Fund and the Companies was a dispute "concerning a determination made" under the relevant sections. But it was not. The dispute involved the Companies' status as an employer and clearly, under *Flying Tiger*, that type of dispute can be brought in court.

Under the MPPAA, where a former employer resumes work after the expiration of an obligation to contribute to a plan, the resumption of work may result in withdrawal liability. 29 U.S.C. § 1383(b)(2). This feature of the MPPAA exists to "eliminate the incentive to pull out of a plan," which could destabilize the fund and jeopardize the payment of benefits to the plan participants. *SUPERVALU, Inc. v. Bd. of Trs. of Sw. Pa. and W. Md. Area Teamsters and Emps. Pension Fund*, 500 F.3d 334, 336 (3d Cir. 2007)). So, the burden fell to the Fund to determine whether "Allied's return to painting potentially triggered withdrawal liability." *Allied*, 107 F.4th at 194.

Twelve years after Allied made its last payment to the Fund, the Fund delivered to Allied a notice and demand for payment of withdrawal liability. *Id.* The Fund's delay in issuing this notice and demand was due to its failure to "rigorously track, much less assess, employer withdrawals," which resulted in "a backlog of hundreds of cases." *Id.* Even in the face of this backlog, "investigations moved slowly," so that "while Allied's potential liability came to the Fund's attention in 2011," the Fund did not provide its notice and demand until six years later. *Id.*

In response to the Fund's demand, Allied requested review and demanded arbitration under 29 U.S.C. § 1401(a)(1). Before the arbitrator, Allied raised an affirmative defense of laches urging that "by the time the Fund notified Allied of its withdrawal liability . . . Allied had no records . . . having purged its records . . . . [a]nd . . . anyone with personal knowledge about the matter was no longer employed or . . . identifiable." *Id.* But the arbitrator rejected this laches defense concluding that while the Fund failed to "act 'as soon as

21

practicable' in issuing a notice and demand to Allied . . . . Allied had failed to establish severe or material prejudice" resulting from that delay. *Id.* at 194-95. "On appeal, the District Court found that Allied was prejudiced by the delay and vacated the Award." *Id.* at 195. The Fund appealed and we affirmed the vacatur of the award, "though on [a] different ground[]," raised sua sponte on appeal.

We affirmed on the independent ground that "the Fund did not act 'as soon as practicable' when it provided notice of Allied's withdrawal liability and demanded payment twelve years after Allied's obligation to contribute to the Fund ceased." *Id*. at 196. This fact "ends th[e] matter." *Id*. To reach this conclusion, we began with "the usual task of giving effect to Congress's directive by looking first to the text of the law." *Id.* at 197. We observed that under the text of the MPPAA, "for a fund to assert a withdrawal-liability claim," it must take three steps:

> Step One: The employer must withdraw from the plan.
>
> Step Two: "As soon as practicable" after withdrawal, the fund must A) provide notice to the employer of its withdrawal-liability assessment and B) demand payment from the employer.
>
> Step Three: The employer must default on a payment "due and payable."

*Id.* (citations omitted). "Until [each] step is taken, the employer has not 'violated an obligation owed the [fund] under

22

the [MPPAA],' and the fund's 'interest in receiving withdrawal liability does not ripen into a cause of action.'" *Id.* As for the notice and demand requirement in particular, we noted that "[n]either the statute nor *Bay Area* requires employers to prove prejudice . . . . [because] [i]f a fund does not issue its demand 'as soon as practicable,' then it has not satisfied one of the *elements* of the MPPAA." *Id.* at 197-98 (emphasis added). That the statute required no prejudice be proven, we continued, distinguished the "as soon as practicable" requirement from "a laches defense." *Id.* at 198. The "prompt delivery of notice and payment demand [i]s a predicate to suing." *Id.* And the Fund's failure to deliver notice and demand promptly was fatal, as a matter of law, to its suit regardless of whether Allied proved that the delay had prejudiced it.

Given the way we have emphatically stated that timely notice and demand is one of three elements necessary to even give rise to a cause of action for withdrawal liability, query whether it was intended to be an issue for arbitration. The MPPAA states that a "determination made under sections 1381 through 1399 . . . shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). Sections 1381 through 1399 repeatedly use the word "determine" and "determination" in reference to the amount of liability and how and when the liability is to be paid.[8] The determinations with which § 1401 is concerned

---

[8] *See, e.g.*, 29 U.S.C. § 1381(b) (referring to the "amount determined . . . to be the allocable amount of unfunded vested benefits"); 29 U.S.C. § 1382 (requiring the "plan sponsor" to "determine the amount of the employer's withdrawal liability"); 29 U.S.C. § 1391 (referring to the "[d]etermination of amount of unfunded vested benefits," and "[f]actors

23

generally go to these computational facts. And we acknowledged as much in *Republic Indus.*, where we discussed the limited authority of arbitrators under the MPPAA to resolve discrete issues such as the applicability of statutory exemptions under the statute and "the amount of . . . withdrawal liability now due and payable." 693 F.2d at 297. Among other things arbitrators had no authority to resolve, we concluded, are facial constitutional challenges to the MPPAA. *Id.*; *see also In re Centric Corp.*, 901 F.2d 1514, 1518 (quoting *Carl Colteryahn Dairy v. W. Pa. Teamsters & Emp.'s Pension Fund*, 847 F.2d 113, 118 (3d Cir. 1988)) (observing that matters subject to arbitration are "those which go to the merits of the liability assessment itself" such as "how and when withdrawal liability is to be assessed") (internal quotation marks omitted).

Under the plain language of the statute, there is no "determination" to be made by the fund or any other party as to the timeliness of a fund's notice and demand. Instead, what is required by the statute is that the notice and demand *be* timely for a claim for withdrawal liability to accrue. So, we conclude that although the question of whether a fund has complied with its obligation to act "as soon as practicable" *may* be a threshold question that could be addressed by an arbitrator in the course of resolving disputes about "determinations made" as to the withdrawal liability under § 1401(a)(1), it is not itself a "determination" *required* to be arbitrated.

As we made clear in *Allied*, timely notice and demand is an element of a withdrawal liability claim, so the existence of this element may be decided by a court sua sponte and

determining computation of amount of unfunded vested benefits").

24

without first submitting the matter to an arbitrator, especially where a decision is straightforward. That the court may render a decision as to timeliness without the question being first presented to an arbitrator is further consistent with our precedent, which has recognized that arbitration is not necessarily required for all issues that arise in connection with withdrawal liability under the MPPAA.

Quite apart from the Dissenting Opinion's characterization that we have manufactured a "dichotomy" between "predicate" and "ordinary" elements to reach the result in this case, the result is dictated by the Supreme Court's decision in *Bay Area* and our own precedent in *Allied*. We merely reason, consistent with this precedent, that the "as soon as practicable" requirement must be met before the Fund even has a claim against the employer. As we recognized in *Allied,* unless and until each element of the withdrawal liability claim has been met, "the fund's 'interest in receiving withdrawal liability *does not ripen into* a *cause of action*." *Allied*, 107 F.4th at 197 (emphasis added). Among these "elements," we expressly held, is the "prompt delivery of notice and payment demand," which "[i]s a *predicate* to suing." *Id.* at 198 (emphasis added). It makes little sense, as the Dissenting Opinion insists, to require that a claim that is legally unripe be submitted to an arbitrator especially given our recognition in *Republic Indus.* and *Dorn's* that the MPPAA's arbitration requirement is not jurisdictional, 787 F.2d at 903. Moreover, the Dissenting Opinion fails to mention let alone grapple with either *Bay Area* or *Allied*, which compel our conclusion.

iii.

As we have explained, the MPPAA expresses a "clear preference for self-regulation through arbitration." *Republic Indus.*, 693 F.2d at 294-95. And while in the mine run of cases this clear preference will prevail, we have recognized some exceptions. In *Dorn's*, for example, we held that a district court may exercise its sound discretion to "bypass arbitration," in "rare cases" that would not benefit from arbitration. 787 F.2d at 903. Citing *Republic Indus.*, we identified "several relevant considerations," in determining whether a court could exercise its discretion in bypassing arbitration:

> whether the issue [i]s one in which an arbitrator would have special expertise;
>
> whether there was a reasonable possibility that arbitration would moot further proceedings and thus serve the goals of judicial economy; and
>
> whether arbitration would help develop a fuller factual record that would assist the district court.

*Id.* (citing *Republic Indus.*, 693 F.2d at 295-96). Since we first decided *Dorn's*, we have made sure to highlight our observation there that bypassing arbitration should be permitted only in the "rare case." *See Colteryahn's*, 847 F.2d 113, 123 n.17 (acknowledging that *Dorn's* limited bypassing arbitration in the "rare case where there would be *no* need for factual development") (citation and internal quotation marks omitted) (emphasis in the original). But these rare cases would not be those in which there was no dispute as to employer status. The "rare cases" exception becomes significantly

26

broader where the issue of employer status, as in *Barker & Williamson*, is thrown into the mix.

And even if we felt constrained by the "rare case" admonition, we conclude that this case falls within the narrow category of "rare cases" we identified in *Dorn's* that need not first proceed through arbitration.[9]

First, resolution of the timeliness question on the record before the District Court did not require the special expertise of an arbitrator. As the District Court found, and the Fund does not dispute on appeal, "[b]ased upon the record evidence, as of 2013, the Fund had all the requisite information available to be aware" of the purported withdrawal liability. JA24. The District Court also found, and the Fund again does not dispute, that the "lengthy procedure" in *Allied*, which we recognized failed to establish excusable delay by the Fund, is the same procedure at issue in this case. The Fund took eight years to act after the last payment by Gagliano's company. Moreover, Gagliano, who likely would have been a key witness in any proceedings to resolve the merits of the withdrawal liability claim, died during this time. This serves to highlight the obvious dilatoriness of the Fund's delivery of notice and demand.

---

[9] The Dissenting Opinion also protests that we have resurrected and expanded *Dorn's*, which it contends had been relegated to the "dustbin" of the year "1986." But beyond quibbling with our view of *Dorn's*, it has ignored precedent that, while on the one hand has acknowledged the "rarity" of its applicability, on the other hand has never overruled it. Thus, *Dorn's* remains good law.

We also hasten to note that in neither its briefs nor at argument did the Fund urge that the District Court's finding that the Fund did not act as soon as practicable in issuing its notice and demand was clearly erroneous. That it would not so urge on appeal is unsurprising given the Fund's effort to justify its lengthy delay in briefing before the District Court fell short of any reasonable mark. *See* D.C. CM/ECF No. 50 at 15 (arguing that the Fund's delay was excusable in the context of a laches defense). By its own admission, the Fund's procedure to determine withdrawal liability, ineffective as it was, identified Gagliano's company as having withdrawn from the Fund by no later than 2019. *See* D.C. CM/ECF No. 50 at 16 (admitting that "CTI appeared on [the Fund's] five-year inactive list [by] 2019"). And yet, the Fund did not issue its notice and demand to the Companies until 2021. No special expertise was required for the District Court to determine what was plain from the undisputed record—the Fund's actions were not timely.

Second, the Companies had properly placed the question of their status as employers before the District Court such that the court would ultimately have had to render a decision on that issue. Thus, the District Court's decision to resolve the case on the timeliness ground without expending additional resources on the employer status issue served, rather than hindered, the goal of judicial economy. Were the District Court to have decided otherwise, it would have been forced to impanel a jury to decide the disputed facts relating to the Companies' status under the MPPAA only to conclude after a lengthy trial that, as a matter of law, the Fund's claim failed because it did not provide its notice and demand to the Companies in compliance with § 1399(b)(1). The District

28

Court was right to staunch the flow of further resources to this case.

Third, there would have been no benefit to insisting that the parties first arbitrate the matter to develop the factual record. Again, as the case was properly presented to the District Court to determine the Companies' employer status, the parties were bound to, and did in fact, conduct discovery. JA10. Thus, the parties had an opportunity to develop the facts, and the District Court was presented with a fulsome record upon which it based its decision. An arbitrator would not have had a better opportunity to develop the record than the District Court had here.

To insist, as the Fund insists, that arbitration was required on this record is contrary not only to the law, but contrary as well to the essential purpose of arbitration in the statutory scheme in the first place—to promote the speedy and effective resolution of disputes. This case required little by way of factual development as all that was required was straightforward application of *Allied*. Finally, although the Fund protests that permitting the bypassing of arbitration in this case would sanction the "unfettered discretion of the district court," Reply Br. 5, to take up issues that should normally pass through arbitration under § 1401(a)(1), the circumstances under which a court would approve of bypassing arbitration that was otherwise required by statute are exceedingly rare.

III.

For these reasons, we will affirm the District Court's order.

29

*RTI Restoration Technologies, Inc. v. International Painters*
*& Allied Trades Industry Pension Fund*, No. 24-2874

PHIPPS, *Circuit Judge*, dissenting.

There are plenty of reasons to conclude, as the Majority Opinion does, that the Fund did not act "as soon as practicable" in attempting to collect withdrawal liability from the Companies. 29 U.S.C. § 1399(b)(1). But clarity as to the resolution of that issue does not mean that the question is properly decided by a federal court instead of by an arbitrator. And from the text of the Multiemployer Pension Plan Amendments Act of 1980, that issue should be initially decided in arbitration – not in court. For that reason, as elaborated below, I respectfully dissent.

The MPPAA has an unequivocal arbitration requirement for disputes between employers and plan sponsors concerning a range of determinations:

> Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration.

*Id*. § 1401(a)(1). The requirement that a plan sponsor notify an employer of its liability "as soon as practicable after an employer's complete or partial withdrawal" from a plan is codified in section 1399 of Title 29 – one of the sections within the statutory range subject to arbitration. *See id*. § 1399(b)(1). Thus, any determination concerning the as-soon-as-practicable requirement is subject to the MPPAA's arbitration requirement and should not be addressed in the first instance in federal court.

The Majority Opinion reaches a contrary result, and neither of its rationales hold up.

1

First, the Majority Opinion announces that there are two tiers of elements for an employer's claim against a plan sponsor under the MPPAA. There are, on the one hand, the newly conceived 'predicate elements,' which are not subject to arbitration under the MPPAA, and, on the other hand, there are the remaining, ordinary elements, which are, according to the Majority Opinion, the determinations subject to arbitration under the MPPAA.[1] With that dichotomy in place, the Majority Opinion then deems the as-soon-as-practicable determination to be one of the newly announced 'predicate elements' outside of the MPPAA's arbitration requirement. The novelty of this approach buys nothing because the text of the MPPAA places the as-soon-as-practicable determination within the statutory range subject to arbitration – regardless of whether it can be labeled as a predicate element or an ordinary element.

Second, and perhaps based on a sense that the predicate-element invention is on shaky footing, the Majority Opinion expands the atextual, rare-case exception announced in the *Dorn's* decision from 1986. *See Dorn's Transp., Inc. v. Teamsters Pension Tr. Fund of Phila. & Vicinity*, 787 F.2d 897, 903 (3d Cir. 1986). Until today, *Dorn's* was in a dustbin. On three occasions, this Court considered the *Dorn's* rare-case exception, declined to apply it, and limited it to its facts. *See Flying Tiger Line v. Teamsters Pension Tr. Fund of Phila.*, 830 F.2d 1241, 1254 (3d Cir. 1987) (distinguishing *Dorn's* as a "rare case"); *Carl Colteryahn Dairy, Inc. v. W. Pa. Teamsters & Emps. Pension Fund*, 847 F.2d 113, 123 n.17 (3d Cir. 1988) (construing *Flying Tiger* to "limit[] *Dorn's* to its particular facts"); *Crown Cork & Seal Co. v. Cent. States Se. & Sw. Areas*

---

[1] To be sure, precedent allows a party to challenge the applicability of the MPPAA's arbitration mandate in court, *see Flying Tiger Line v. Teamsters Pension Tr. Fund of Phila.*, 830 F.2d 1241, 1251 (3d Cir. 1987), but once a dispute is within that mandate, every element of an MPPAA claim should be subject to arbitration, *see* 29 U.S.C. § 1401(a)(1).

*Pension Fund*, 881 F.2d 11, 18 n.17 (3d Cir. 1989) ("[C]ircuit precedent permitting arbitration to be bypassed—particularly, *Dorn's Transportation*, 787 F.2d 897—has been limited to its particular facts."). After the last of those decisions in 1989, this Court has not relied on the *Dorn's* rare-case exception. Resurrecting and expanding *Dorn's* rare-case exception contravenes the line of precedent that has limited *Dorn's* to its facts.

In sum, it is not necessary to manufacture a predicate-element approach or to revive and enlarge a long-abandoned atextual exception because the answer to the question presented here can be found in statutory text: as-soon-as-practicable determinations are subject to mandatory arbitration. *See* 29 U.S.C. § 1401(a)(1); *see also id.* § 1399(b)(1).